### SMITH v. SPARKS MILLING COMPANY

[No. 27,559. Filed February 2, 1942. Rehearing denied March 16, 1942.]

580

*Claycombe & Stump*, of Indianapolis, and *Walker, Hilleary & Cox*, of Terre Haute, for appellant.

*Cooper, Royse, Gambill & Crawford*, of Terre Haute, *Green & Hoagland*, of Alton, Illinois, and *Burrell Wright*, of Indianapolis, for appellee.

ROLL, J.—This action was brought by appellant to impress a trust for the benefit of himself and others in class with him, upon funds which had been collected by appellee milling company from appellant and others in his class, to use in paying its processing taxes under the Agricultural Adjustment Act, but which funds were not, and cannot now be used for that purpose, because the act was declared unconstitutional, and to obtain an accounting of the funds thus collected and distributed to appellant and others in class with him of the balance of the fund after proper charges against it have been deducted.

The issues were made upon appellant's second amended complaint, to which appellee demurred. The trial court sustained appellee's demurrer. Appellant refused to plead over and judgment was rendered on the pleadings, and this appeal followed.

The sufficiency of appellant's complaint is the only error presented.

In the complaint, it is alleged that appellee is a foreign corporation, organized and operating under the laws of Illinois, and qualified to do business in Indiana, with its principal place of business at Terre Haute, Vigo County, Indiana.

Appellee corporation was engaged in the manufacture of flour and other grain products, and was a first domestic processor of corn, wheat, and rye, as first domestic processor was defined in an act of Congress known as the Agricultural Adjustment Act. Appellant was engaged in the bakery business in Attica, Indiana.

On August 29, 1935, appellant entered into a contract with appellee for the purchase of 210 bbls. of 98 Used Car Hi Speed flour, $6.90 per bbl., and the same was delivered on September 3, 1935. A second contract was executed September 19, 1935, for 250 barrels of flour to be delivered on November 4, 1935.

The contracts were labeled, "Millers' National Federation Uniform Sales Contract," adopted July 10, 1934.

The principal question presented by the record involves the construction of the contracts and more particularly the following paragraph contained in each of the contracts:

"TAXES: The price named in this contract includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture by virtue of the authority vested in him by the Agricultural Adjustment Act of the United States. Under said Act it is provided that said taxes may be changed from time to time. It is recognized by the parties hereto

that there is a growing tendency on the part of the
United States and the separate states to tax grain
and grain products, containers and other items
used in connection with the manufacturing, pro-
cessing, blending, sale or distribution thereof. It
is, therefore, agreed and understood that if, after
the date of this contract, the commodities and/or
containers, or other items used in connection with
the manufacturing, processing, blending, sale or
distribution thereof, shall become subject to any
increase in taxes or to any new or additional tax
or taxes other than those included in the price
hereof, (if the seller shall be required by law to
collect such additional taxes), then, in that event,
said increases or additional taxes shall be added to
the price hereof; and correspondingly, if any tax
included in the price hereof shall be decreased or
abated, then, in that event, said decrease or abate-
ment shall be deducted from the price hereof."

The contracts were fully executed; the flour shipped
and accepted, and the purchase price paid as stipulated
in the contract. The complaint also alleged, that the
proper authorities, acting under the provisions of the
Agricultural Adjustment Act, adopted certain conver-
sion factors with reference to products processed from
wheat, and that according to said conversion factors,
fixed the processing tax on all wheat flour except whole
wheat and graham at $1.38 per barrel of 196 pounds.

Appellant alleged that pursuant to said Agricultural
Adjustment Acts, appellee in accord and unison with
the flour mills throughout the United States, added to
the then prevailing and existing price of wheat flour
and to the price named in the contract of sale, a separate
and distinct item of $1.38 per barrel for the purpose of
placing the defendant in funds for the payment of the
said processing tax.

It is also specifically alleged in the complaint that
appellant and others similarly situated and for whose
benefit this action is brought, did not pass the said

processing tax of $1.38 per barrel, or any part of it to their customers.

The complaint further recites, that on or about July 1, 1935, appellee began an action in the District Court of the United States, for the district of Illinois, against the collector of internal revenue, for the purpose of restraining and enjoining the collection of the processing tax from the appellee, on the theory that said act, under which said processing tax was levied, was unconstitutional. An order was issued, restraining the collector of internal revenue from collecting said processing tax which had accrued after May 1, 1935. The court further ordered the petitioner, however, to deposit with the clerk or a designated bank a sum of money equal to the processing taxes claimed to have accrued against it during the period covered by the order, and in complying with said order, the petitioner did make deposits equal to the amount of said processing taxes which accrued pursuant to said law against it for the months of May, June, July, August, September, October, and November, in the aggregate sum of $300,000, all of which sum had been accumulated by the milling company from the purchasers of its flour and other products in the manner set out above. All of said sum, according to said order, was to be held until the final determination of said cause. In the event the act was held to be valid, said money was to be turned over to the government, but should the act be held unconstitutional, the funds were to be released to the petitioner. The act was held to be invalid on January 6, 1936, by the Supreme Court of the United States in the case of *United States* v. *Butler*, 297 U. S. 1; and as a result of this decision, the restraining order was made permanent, and all the funds turned back to the petitioner.

The complaint herein is lengthy and we will not attempt to set out all the averment made, but it may be considered that facts are alleged in the complaint that fully present the questions hereinafter discussed.

The first question presented is whether or not, under the contract, plaintiff is entitled to a refund equal to the amount of the tax imposed upon the processing of flour purchased from the defendant, and paid by plaintiff.

This identical question has been before the court quite a few times since the decision of the Butler case. Following are some of the cases in which this question has been considered; some of them are cited and relied upon by appellee:

Johnson v. Igleheart Brothers, Inc. (Ind. ____ C. C. A. 7th), 95 F. (2d) 4; Continental Baking Co. v. Suckow Milling Co. (Ind. ____ C. C. A. 7th), 101 F. (2d) 337; Moundridge Milling Co. v. Cream of Wheat Corp. (Kan. ____ C. C. A. 10th), 105 F. (2d) 366; O'Connor-Bills, Inc. v. Washburn-Crosby (D. C. ____ W. D. Mo.), 20 Fed. Supp. 460; Johnson v. Scott County Milling Co. (D. C. ____ E. D. Mo.), 21 Fed. Supp. 847; Lash's Products Co. v. United States, 278 U. S. 175, 73 L. Ed. 251; Heckman & Co., Inc., v. I. S. Dawes & Son Co., Inc., 12 F. (2d) 154; Golding Bros. Co. v. Dumaine (C. C. A. 1), 93 F. (2d) 162; Cohen v. Swift & Co. (C. C. A. 7), 95 F. (2d) 131; G. S. Johnson Co. v. N. Sauer Milling Co., 148 Kan. 861, 84 P. (2d) 934; Zinsmaster Baking Co. v. Commander Milling Co. (Minn.), 273 N. W. 673; Carolina Textile Co. v. Eastern Yarn Co. (1939), (Mass.) 24 N. E. (2d) 149; Noll Baking & Ice Cream Co., v. Sparks Milling Co. (1940), (Ill.) 26 N. E. (2d) 425; United States v. Hagan & Cushing Co. (1940), 115 F. (2d) 849 (divided court) ; City Baking Co. v. Cascade Milling & Elevator Co., 24 Fed. Supp. 950; Consolidated Flour Mills v. Ph. Orth Co. (1940), 114 F. (2d) 898; Crete Mills v. Smith Baking Co. (1939), 136

Neb. 448; United States v. American Packing & Provision Co. (1941), 122 F. (2d) 445.

One of the early cases decided involving a similar contract, and one much relied upon by appellee is the case of *Johnson* v. *Igleheart Bros., Inc., supra.* The court in that case had occasion to discuss the question of an implied contract. After quoting from several cases as to the proper function of courts in the construction of contracts, in which rules we fully concur, it announces the rule as follows:

> "It seems clear to us that the law is well settled that where parties expressly contract, under what circumstances an obligation may arise with reference to a certain subject-matter, where the same is entered into without fraud or mutual mistake, it excludes the possibility of an implied covenant of a contradictory or different nature."

We think this is a correct statement of the law, and we will have occasion to refer to this rule again later in this opinion.

It was also urged by the plaintiff in that case that he should be allowed to recover on the equitable principle that a denial of his claim will result in an unjust enrichment of the defendant at his expense. The court answered this contention by saying that: "We do not think we are called upon to deal with such a theory." We will have occasion later in this opinion to say something further on this point.

The court attempted to distinguish the case of *Wayne County Produce Company* v. *Duffy-Mott Company, Inc.* (1927), 244 N. Y. 351, from the case under consideration. The court said that in the Duffy-Mott case, there was no written contract. This may be true, but however that may be, we think it clear that the court did not rest its decision upon that point. No mention of that

fact, if it be a fact, was made nor did the court make any attempt to apply different rules in the interpretation of the contract because it was oral. The second distinction pointed out by the court was that, "The amount paid as taxes and held to be recoverable, was not included in the sale price of the product, but was in addition thereto and billed as a separate item."

The court then quotes from the Duffy-Mott case thus:

"This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit of the seller." .

Following this quotation from the Duffy-Mott case, the court decides the Johnson case in the following language:

"In the instant case the amount of the alleged tax was included and absorbed in the price named in the contract and paid by the buyer, and we think it was a price to be paid at all events."

If the court was correct in its conclusion that the price paid was a composite price, the court correctly decided the case. The court relied and cited as its authority for the above conclusion the case of *O'Connor-Bills, Inc.*, v. *Washburn-Crosby Company* (D. C. W. D. Mo.), August 31, 1937, 20 Fed. Supp. 460.

It will be noted that in the case just cited, the question there presented was whether the plaintiffs could maintain a class suit in equity, on the theory that they had an interest in the funds which the defendants had deposited with the court in an injunction suit against the collector of internal revenue. It is true that the court used language favorable to the appellee and language that, at first reading, would seem to lend support to the proposition stated in the Johnson case. But, it is apparent that what the court said was to lay

a basis for its subsequent holding that there was no basis for a suit in equity. The court said on page 462:

"The right of action, if any, is on the contract, and, since the relationship of debtor and creditor at best could only exist, the plaintiffs must stand or fall upon their several separate contracts."

So, it is clear that the court never considered or decided the question presented in the *Johnson* v. *Igleheart* case.

It should also be noted that the contract involved in the O'Connor-Bills case was altogether different from the one in the Johnson case or in the present case.

The case of *Heckman & Co., Inc.* v. *I. S. Dawes & Son Co., Inc.*, 56 App. D. C. 213, 12 F. (2d) 154, also cited and relied upon in the Johnson case was specifically disapproved by the New York Court of Appeals in the Duffy-Mott case *supra*. Judge Cardozo, in the Duffy-Mott case, said that the decision in the Heckman & Co., case resulted from a misconception of the contract.

The case of *Lash's Products Company* v. *U. S.*, 278 U. S. 175 is cited and relied upon in many cases, and is cited and relied upon in the decision in the Igleheart case. We are unable to see how it can add much to a solution of the question here presented. No question was presented in that case which involved contract rights between buyer and seller. The only question presented was whether a federal tax on soft drinks was to be computed on the total price for which the drinks were sold, including any amount added by the seller to meet the tax, or upon the amount after the tax was deducted. The decision involved a consideration of a special regulation of the commissioner of internal revenue requiring the tax to be billed as a separate item in order not to have the tax computed

on the full price including any amount added to meet the tax.

The earlier case of *Kastner* v. *Duffy-Mott Co.* (1925), 125 Misc. 886, 213 N. Y. Supp. 128, wherein the court denied recovery by the plaintiff under almost the exact state of facts as was present in the *Wayne County Produce Co.* v. *Duffy-Mott Co.*, case, was definitely disapproved by Cardozo, Ch. J. in the latter opinion. Yet it will be observed that most of the cases denying recovery cite and rely upon *Kastner* v. *Duffy-Mott Co.* and the other cases above cited as authority for their holding.

The case of *Consolidated Flour Mills Company* v. *Ph. Orth Company* (1940), 114 F. (2d) 898, 903, is also cited and relied upon by appellee. This case was decided by the 7th Circuit Court of Appeals, the same court that decided the Igleheart case. Here the court said:

> "Moreover this is a case where only one price, the price paid for the flour, was stated. The contracts and invoices reveal that the defendant did not pay two separate funds to the plaintiff, namely, a fund for the flour and a fund for the tax."

In support of this proposition the court cites the Lash's Products Company case *supra,* and quotes as follows from that case:

> " 'The amount added because of the tax is paid to get the goods and for nothing else.' "

The court quotes from *Continental Baking Co.* v. *Suckow Milling Company,* 7th Circuit Court, 101 F. (2d) 337, 339, as follows:

> "Perhaps the price is larger because of the tax but . . . no part of the price paid can be identified as money paid only for the tax."

In the Continental Baking Company case, the court gives much weight to the fact that the contracts did

not separate the tax as a separate item in addition to the stated price of the flour. The court said at p. 338:

"The contract and the exhibit reveal that plaintiff did not pay two separate funds to the defendant, namely, a fund for the flour and a fund for the tax, but on the contrary, the bill alleged that there was but one price named in each of the contracts. In other words, this is a case where only one price, the price paid for the flour, was stated. As expressed in the language of Mr. Justice Holmes, speaking for the whole court, 'The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else.' *Lash's Products Co.* v. *U. S.*, 278 U. S. 175, 176, 49 S. Ct. 100, 73 L. Ed. 251."

The case of *United States* v. *American Packing & Provision Co.* (1941), 122 F. (2d) 445, 448, 449, is a very interesting case. In that case the American Packing and Provision Company had been the successful bidder and as a result thereof entered into contracts with the U. S. Government to furnish certain of its products to governmental agencies. The contracts were accepted and the full purchase price paid including the sum of $2,931.14 processing tax. Afterwards another contract was entered into by the same parties for the purchase and sale of processed products of like kind and character. The products were furnished and accepted by the government and an invoice in the sum of $3,708.41 was submitted to the government for payment. The government deducted from the contract purchase price the sum of $2,931.14, the amount of the tax paid on the first contract, and tendered the vendor the sum of $771.27 which represented the contract price less the amount of the tax paid under the first contracts. The vendor refused the tendered amount and sued for the entire amount of the contract price. The government pleaded a set-off in the amount of the

taxes paid on the first contract. The trial court awarded judgment for the entire amount of the contract price and on appeal the Circuit Court of Appeals of the 10th Circuit revised the judgment of the lower court, allowed the set-off, and directed that judgment be entered for appellee for the sum of $771.21. In reaching its conclusion the court reviews and epitomizes the holding in many of the cases hereinbefore cited.

We quote rather freely from this case because we feel that it is helpful in arriving at a correct solution of the question here presented. The following exerpt from the opinion we think particularly applicable:

"From the Government's viewpoint the taxes imposed by the Agricultural Adjustment Act were valid, subsisting and applicable when the bids were made and the contracts entered into. *Their payment by the Government to the vendor and by the vendor to the Government was clearly and manifestly contemplated by the parties.* The clauses are ample evidence of the intention of the parties to bid and contract for a price which would include a margin of profit, plus applicable taxes. Cf. Continental Baking Co. v. Suckow Milling Co., supra. They are prima facie evidence that the purchase price, fixed by the contract, did include the applicable processing taxes. It is true that the vendor enjoined the collection of the tax before any of the contracts were awarded, but in the absence of proof to the contrary it will be presumed that the vendor included the tax in calculating his margin of profit. If that be true, his margin of profit was increased by the amount of the applicable taxes. *The amount of the taxes were definite and ascertainable. They were not 'buried' or 'absorbed' in the sense that the burden of their payment could not be fixed with sufficient definiteness. Consequently, the Government put the vendor in funds for the payment of a tax, exclusive of his margin of profit, and the vendor enjoyed a profit and the Government suffered a detriment not contemplated by the agreement.*" (Our emphasis.)

What the court said in the above excerpt is clearly applicable in this case. The processing taxes at the time appellant and appellee entered into their contract of purchase and sale, were assumed to be valid, subsisting and applicable taxes. The payment of the tax by the vendee to the vendor and then by the vendor to the government was clearly and manifestly contemplated by the parties. The fact that the contract specifically stated that the price named in this contract included all taxes as at the date thereof proclaimed by the Secretary of Agriculture by virtue of the authority vested in him by Agricultural Adjustment Act, could have no other purpose. This provision points unerringly to the fact that the parties had definitely in mind the processing tax, the amount of which was known to both parties at the time, to be $1.38 per barrel.

The court in the following paragraph said:

"It may be conceded that if the right of the Government to recover is dependent upon the contracts between the parties, it must fail. . . . Indeed, the Government did not plead the contracts between the parties as a basis for its right to recovery, and therein lies the distinction between the rule announced in some of the adjudicated cases and relied upon by the vendor."

In a previous paragraph the court discussed and cited several cases involving the right of a purchaser to recover under similar sales contracts. Among the cases mentioned was the Duffy-Mott Company case. The court said:

"In our view this case falls within the rationale of Wayne County Produce Co. v. Duffy-Mott Co., supra, which granted recovery *on equitable principles.*" (Our emphasis.)

The court's final decision however, is based entirely upon other grounds. The court said at p. 449:

"We hold that under the facts here, the Government put the vendor in funds for the payment of a tax, exclusive of the purchase price, calculated by the vendor and which the vendor did not pay, as contemplated by the parties. As a consequence, the vendor received a benefit from the Government, which *in justice and good conscience* should be returned. The Government having pleaded the same as an *equitable set-off*, it is entitled to recover against the contract sued upon." (Our emphasis.)

The opinion also states that the result reached was not in conformity with the majority view expressed in *United States* v. *Hagan & Cushing Co.*, 115 F. (2d) 849, which denied relief. The facts were very much like the facts in the American Packing & Provision Co. case, except the government had paid the full purchase price and, after the decision in the case of *United States* v. *Butler, supra,* brought an action to recover an amount equal to the processing taxes, which the AAA imposed on products covered by the contract, on the theory that appellee had been overpaid by the amount of such taxes. The decision is of no assistance here, because the courts denied recovery on the sole ground that under the contract the prices named in the bid were to be increased or decreased, *only* if the taxes charged were paid by the contractor, and it was admitted that the taxes were not paid by the seller. So, it seems clear that the majority opinion in the Hagan & Cushing Co. case is of little value here. It might also be noted here that the court did suggest that some *equitable remedy,* such as one for *unjust enrichment,* might be available. The court in the American Packing & Provision Co. case apparently took the view that recovery was denied in the Hagan & Cushing Co. case because they did not invoke some equitable principle. If so, we think the court misinterpreted that decision. The court, however,

agreed with the dissenting opinion in that case. The gist of the dissenting opinion by Judge Healy is in the following exerpt:

"The view has been taken, on the supposed authority of the Duffy-Mott case, supra, that the inclusion of the tax in a composite price is fatal to recovery. Here, the amount of the tax was not segregated in the bids nor set out as a separate item in the contracts. *In this sense the price bid was a composite thing. But I am unable to see the logic of holding that this fact alone should be held to nullify the right of restitution where the buyer is otherwise thought entitled to restitution.* The tax was not on the sale, but on the processor whether he sold or not. Where, as in this instance, the amount of the super-added tax is subject to exact ascertainment by mere mathematical computation, the fact that it is not set up as a separate item ought not of itself be an insuperable bar to recovery. More, the contracts treat the processing tax as an item which was to be segregated in certain contingencies. They provide that, in the event of a change or new imposition, 'the prices named in this bid will be increased or decreased accordingly'." (Our emphasis.)

We agree with the opinion in the case of *United States* v. *American Packing & Provision Co.,* as to its analysis of the contract therein construed, and concur in the result reached. We are, however, unable to follow the reasoning by which it denominates the set-off filed by the defendant, as an equitable set-off, and, because it did file an equitable set-off, it should have been allowed. We cannot see how any equitable principle was or could be involved. We think the court was also in error in its view that the decision in the *Wayne County Produce Company* v. *Duffy-Mott Company* case, *supra,* was placed upon equitable principles. As we understand that case, recovery was permitted squarely

upon the court's construction of the contract involved and upon principles of law governing the same. So it seems to us that the court in the American Packing & Provision Company case, after it had interpreted the contract as set out in the excerpt heretofore quoted, should have allowed recovery *under the contract* as was done in the Duffy-Mott case.

Judge Healy in his dissenting opinion, thought recovery should have been allowed under the proper construction of the contract and not upon some equitable principle.

In *Cohen* v. *Swift & Co.*, 7th Circuit, 95 F. (2d) 131, we find almost the identical facts as in the case at bar. However, the contract between the parties is not set out. The only information we have as to the terms of the contract is found in the court's statement at the bottom of page 131 as follows:

". . . neither is any agreement, express or implied, alleged, whereby appellee agreed to pay to appellant and those like situated the tax so imposed."

The court in its decision leans heavily upon the case of *Heckman & Co., Inc.,* v. *I. S. Dawes & Son, Inc.,* 56 App. D. C. 213, 12 F. (2d) 154, and *Kastner* v. *Duffy-Mott Co.,* 213 N. Y. S. 128, both of which cases were criticized by Ch. J. Cardozo in the *Wayne County Produce Co.* v. *Duffy-Mott Co.* (1927), 244 N. Y. 351, in the following language:

"There have been rulings to the contrary (Heckman & Co. v. Dawes & Son Co., Inc., Ct. of Appeals, D. C., 12 Fed. Rep. [2d] 154; Kastner v. Duffy-Mott Co., App. Term, 125 Misc. Rep. 886.) They have their origin, it would seem, in a misconception of the contract."

The court also leans heavily upon the case of *Lash's Products Company* v. *U. S.,* 278 U. S. 175, 49 S. Ct. 100,

73 L. Ed. 251. While the language quoted from these cases by many courts citing them as authority, are favorable to appellee's contention, we do not think they are applicable to the question here under consideration, and certainly should not be considered as controlling.

In *The Ismert-Hincke Milling Co.* v. *U. S.* (1940), 90 Court of Claims 27, the court was presented with the same facts as were present in the *United States* v. *American Packing & Provision Co.* case, 122 F. (2d) 445, *supra,* and in the case of *United States* v. *Hagan & Cushing Co.,* 115 F. (2d) 849, *supra,* and also in the late case of *United States* v. *Kansas Flour Mills Co.,* — U. S. —, 62 Sup. Ct. Rep. 232, Dec. 8, 1941.

The court in the Ismert-Hincke Milling Co., case denied the plaintiff recovery upon their construction of the contract, following the reasoning in *Continental Baking Co.* v. *Suckow Milling Co.,* 101 F. (2d) 337; *O'Connor-Bills, Inc.* v. *Washburn-Crosby Co., supra; Cohen* v. *Swift & Co.,* 95 F. (2d) 131; and *Johnson* v. *Igleheart Bros., supra.*

We think the court was correct in its conclusion that whether relief will be allowed or denied must rest upon the proper construction of the contract, and not upon any equitable principles. We are unable to conceive any place for the application of equitable principles, such as equitable set-off, unjust enrichment, or to repay as justice and good conscience should dictate.

If the contract here in question, or in any of the cases herein cited, is enforcible in a court of law, and the seller is entitled, under the terms of its contract, to recover the full contract price, even though that price includes the processing tax, how could it be said that in so recovering, he is being unjustly enriched? It is illogical to hold that a contracting party is being unjustly enriched at the

expense of the other contracting party, when he receives only that which his lawful contract gives him, and what the other party, without fraud or mutual mistake, agreed he should have. Certainly a court of equity would not say to the plaintiff, that it will not permit him to keep that which he lawfully contracted to receive, and that which the law gave him, and hold that there was an implied agreement that he would refund a portion thereof? On the contrary, equity will also require parties to comply with and carry out the terms of their contract. Neither could it be said that justice and good conscience would dictate a return of any part of that which the contract gives. To so hold would be to announce a strange doctrine indeed. To ask the question is to answer it. The maxim, equity delighteth in the law, and equity follows the law, is applicable here. Again such a holding would run counter to the well established rule as laid down in the excerpt above quoted from *Johnson* v. *Igleheart, supra,* to the effect that no implied agreement will be indulged which is contrary to the expressed agreement.

From what we have said above, we think it must follow that whatever rights plaintiff may have must be governed by the terms of the contract and from the contract alone, and not by the application of any equitable principles. Consequently, the question of whether plaintiff may recover a refund depends upon the construction of the tax clause set out in the first part of this opinion.

In reading the opinions in the cases herein cited and others which we have not cited on the question, a very distinct difference in some of the tax clauses is clear, but the opinions do not seem to turn so much upon the particular tax clauses in the contract as upon the general principle that the price named in the con-

tract is a composite price to be paid at all event, and that the tax item is absorbed in the composite price, and therefore, the purchaser paid one price for the articles purchased and nothing more. As we construe the contract here involved, we do not think such a construction can be supported. We are unable to see how the price named in the contract can be said to be a composite price, as such term is construed in the cases hereinbefore cited. It, at the most, can be said to be a composite price, in the sense that the price of the flour and the amount of the tax are added together and the total appears as one item. But were they merged and consolidated in fact, or in the minds of the parties at the time? If so, why the recitation in the first part of the tax clause, which said:

"The price named in this contract includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture, etc."

We call attention to the following quotation from the recent case of *United States* v. *Kansas Flour Mills Co.* case, *supra,* in which the Supreme Court was considering a sales contract, somewhat different from the one here in question, but, in its discussion, stated some fundamental rules of construction of contracts, and in applying them to the facts there presented, used language which, in many respects, is applicable here:

"The contracts are to be construed in the light of the relations between the parties at the time they were executed. The Agricultural Adjustment Act did not exempt a vendor to the United States from the processing tax; and a Treasury Regulation required that he pay the tax. The quoted clause shows that this tax was specifically in the minds of the parties, for it was stipulated that it was included in the price bid. . . . The stipulation was

evidently made in view of the facts that the purchasing officer could not buy the goods tax-free and that the Government desired that the price to it should be ex-tax. To accomplish this the sale price was pro tanto offset by the amount of the tax. Plainly, if the United States had not been thought entitled to collect the tax, the bid price would not have been acceptable. Plainly, also, if the respondent had not been thought liable for the tax, the bid price would have been less. As disclosed by the contracts, the understanding was that the price would have been less by the amount of the tax. The respondent disputes this, contending that we cannot say how much of the tax it was willing to absorb in order to obtain the contracts; that it may have been making the sales at an actual loss. But this is not the theory of the contracts. They provide that if, in future, any existing tax described therein is changed by Congress the price named in each contract 'will be increased or decreased accordingly.' This does not mean, as contended by respondent, that the amount of increase or decrease is an unknown quantity to be made definite and certain by proof. It means that the amount of any increase in tax shall be added and the amount of any decrease subtracted from the contract price. This view is strengthened by the provision for separate billing of the increase, if any.

"The respondent, however, argues that, under any construction, the Government is not entitled to maintain its set-off, first, because the contracts contain no undertaking by respondent that it will pay the tax and, secondly, that, even if they do, the stipulation for reduction of price applies only to changes by Congress and excludes relief from the tax by an adjudication that the exaction is unconstitutional."

We do, however, confess our inability to follow the court's reasoning in arriving at its conclusion that Congressional action subsequent to the decision in the Butler case amounted to a change made by Congress in respondent's liability for the tax, within the meaning of the contract. Whether that part of the court's opin-

ion is sound or not, we do submit that the court's analysis of the tax clause is sound and logical.

As stated in the above case, we must put ourselves in the position of the contracting parties at the time of the execution of the agreement. The tax clause in the contract shows that the processing tax as it then existed was specifically in the minds of the parties because it was expressly stated that it was included in the price. If the processing tax was in the minds of the parties as a separate and distinct item, an item separate and apart from the price of the flour as it then existed, the court in construing the contract must also consider the price of the flour and the tax item as separate and distinct items, notwithstanding the contract listed both as one item. The amount of the tax was definitely known, especially by the seller. The price of the flour as such, we must assume, included appellee's anticipated profit; consequently, the $1.38 per barrel processing tax was never contemplated by the parties as an item to increase that profit. It is shown by the complaint herein, that when the processing tax became effective, all processors of white flour, raised the price of flour, as they express it, by adding thereto $1.38 and when the act was declared unconstitutional, the price was immediately reduced by that amount.

It is quite evident that the processors had no difficulty in separating the tax item from the price of their product, either at the time the law became effective or at the time it was declared invalid. It might be noted here that appellee experienced no difficulty in separating the two items in the injunction suit. It retained the actual price it received for the flour, and paid the tax item into court.

It was stated in several of the cases herein cited,

that the tax clause provided protection in case of any increase or decrease of the federal tax, but made no specific provision for a refund or reduction in the event the tax was declared invalid. The answer to this contention to us seems clear.

The proviso in the tax clause specifically provided for adding to or deducting from the price, depending upon any increase or decrease in the tax. The parties to the contract were not interested in the item of tax as far as barter and sale was concerned. That item was determined by the law, and not by any agreement of the parties. Whatever burden existed at the time or might thereafter be imposed by the imposition of the processing tax was to be borne by the purchaser. It was an item that had to be paid; at least it was assumed to be so in the contract. Only one object could be attributed to the tax clause, and that was, to the effect, that the seller was to receive a certain price for the flour, which price was to remain stable and fixed and payable in all event, and in addition to this fixed and recognized price of the flour, there was added the federal tax, which was at that time $1.38 per barrel. But the tax item was not a fixed and stable item. It was an item that might be changed, and was so recognized by the parties, and they provided that if the tax be increased, the purchaser should be charged the additional amount, but if it was decreased or abated, the amount thereof should be deducted.

The parties were not primarily interested in the method or means by which the tax might be increased or decreased, whether in whole or in part, whether by an act of the administrative department of the government, by Congress, or by a judicial decision. The thing they had in mind in adopting the tax clause was to take care of the federal tax; to protect both the vendor

and vendee in case any change should be made affecting that particular item. The only thing the processor sought to accomplish was to protect himself against the processing tax of $1.38 per barrel and any increase thereof on the article covered by the contract. His margin of profit was taken care of in the price of the flour itself. The purchaser, of course, agreed to that, and to pay that item in addition to the price of the flour. On the other hand, if there was any decrease or abatement of the tax item, a like deduction should be passed on to him.

This is the only reasonable construction, we think, that can be subscribed to the tax clause in the contract, unless we attribute to the processor an uncomplimentary purpose, and say that the vendor purposely and designedly omitted from the contract any reference to the consequences in the event the tax law was found to be invalid, in which event they would be permitted to keep the amount of the tax. At the very time this contract was executed, the validity of the Agricultural Adjustment Act was being very seriously questioned in the courts, and this fact must have been known to appellee. In fact, the complaint alleged that on July 1, 1935, appellee itself filed its suit in the Federal Court to enjoin the collection of the processing tax on the theory that the law was unconstitutional. It was therefore, at the very time the contracts here in question were executed, contesting the validity of the tax law. Therefore, appellee must have appreciated the fact that there were reasonable grounds to believe that it would not be required to pay the processing tax because of the invalidity of the act. We cannot attach such a motive to appellee, and other processors in preparing their uniform contract. We cannot and do not think they purposely or wittingly wrote a

"trick" contract. Consequently, we must analyze the various provisions of the contract, in the light of the conditions as they existed at the time, aided by the presumption that both parties were honest and well-meaning.

Appellee says that the contract provides for a reduction in the price only if the tax should be "reduced" or "abated" in certain instances and no provision was made for a reduction in the price in the event the tax was invalidated by judicial decision. In other words, they would have us hold that under the proper construction of the contract, it was the intent of the parties, that, if the tax was "reduced" or "abated" by the administrative body or by Congress, or by some other agency, then the purchaser would be entitled to a reduction in the price; but, if the tax was entirely removed by a judicial decision, then the seller was to keep the money, and the purchaser was to receive no benefit thereby. Such a construction to us seems absurd. It seems to us that no such construction can reasonably be placed upon the tax clause of the contract. Because, first, the common and ordinary meaning of the word abate, as defined by Webster's New International Dictionary, unabridged, Second Edition, is "to throw down; to demolish; to put an end to, or to do away with." Law: "To bring entirely down or demolish; to put an end to; to do away with; . . . to nullify; to make void." So, if we give the words used by the parties to the contract, their usual and ordinary meaning which we must do, unless there is a clear intent that they are to be otherwise construed, the language in the tax clause itself is broad enough to include a reduction or abatement by judicial decision. But even if it could be said that there was a doubt as to the proper con-

struction of the language used; that the tax clause was ambiguous as to what was meant by the words "reduced or abated" we would still be constrained to reach the same result, for the reason that it is a uniform rule of construction of contracts that:

> "Where a contract is ambiguous it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises, the reason for the rule being that a man is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt . . . another thing more to his advantage." 17 C. J. S. Contracts, § 324, p. 751 and cases there cited.

The contract shows on its face that it was a uniform contract, adopted by the Millers Association. So we must construe the tax clause most strongly against appellee and adopt the construction most favorable to appellant.

In so construing the tax clause, we are forced to conclude that the invalidity of the law worked a reduction or abatement in the price named within the meaning of the contract.

In this construction we find support in the excerpt heretofore quoted from the case of *United States* v. *American Packing & Provision Company, supra;* also in the dissenting opinions in *Johnson* v. *Igleheart, supra,* and *United States* v. *Hagan & Cushing Company, supra.* We are also strengthened in our view by the court's construction of the contract in *United States* v. *Kansas Flour Mills Co., supra.*

We are not unmindful of the fact that this opinion is not in harmony with the cases herein cited, and others that might be added, but we are convinced that those

cases are unsound, illogical and should not be followed. Those cases holding that there can be no recovery, because the price named in the contract was a composite price and that the tax item was buried and absorbed in the total price which price was to be paid in all events, had their origin, it seems to us, in: (1) A misconception of the language used in *Wayne County Produce Co., Inc.,* v. *Duffy-Mott Co., Inc., supra;* and (2) in their conclusion that *Lash's Products Co.* v. *United States* and *Kastner* v. *Duffy-Mott Company* cases were authority for their conclusion.

We have pointed out above the reasons why the case of Lash's Products Company was of little value in this type of case. In reading the many cases herein cited, we are pursuaded that the several courts citing and relying upon the Lash's Products case were intrigued by the phraseology used by Justice Holmes in that case, and erroneously concluded that what he said in that case was applicable to the question presented in their cases.

We have also pointed out that the *Kastner* v. *Duffy-Mott Co., Inc.,* case, *supra,* was overruled by the case of Wayne County Produce Company, *supra.* Notwithstanding, we find that these two cases are consistently cited in favor of the view denying relief to the buyer. In the early decisions denying such relief, the opinions were based upon these two cases, and in the later cases, these two cases are very generally cited as well as the early cases based upon these two cases.

Viewing the contract from the position of the parties at the time the contract was executed, the evident purpose of the tax clause, the object to be accomplished thereby, the language used by the parties, coupled with the fact that the amount of the processing tax was definite and certain and the

exact amount thereof known at the time, we are forced to conclude that the total price was not a composite price, in the sense that the real price of the flour and the amount of the processing tax were inseparable.

As we have heretofore stated, we are fully convinced that this is an action at law upon the contract, and that there is no room for the application of equitable principles. It is alleged in the complaint that there are others who entered into contracts of purchase with the defendant, identical in terms, except as to time, amount, and date of delivery, etc., as this plaintiff. But even so, only the relationship of debtor and creditor could exist, and each must stand or fall upon its several separate contract. It cannot be said that the plaintiff herein has a right to sue for and on behalf of others to avoid a multiplicity of actions, because he is not menaced with a multiplicity of actions.

The judicial opinions on the question of when a class action can be maintained cannot be harmonized. We find irreconcilable conflict in the cases. It would not be advisable to undertake, in this opinion, an analysis of the many conflicting holdings on this question. We are content to cite the case of *Vandalia Coal Co.* v. *Lawson* (1909), 43 Ind. App. 226, 87 N. E. 47. This is quite a lengthy opinion and many cases are cited and reviewed. The principles therein set out, we think, are controlling here. Consequently, we hold that this is not a proper case for a class suit; and we so hold.

But if, under the code § 2-1004, Burns' 1933, § 110, Baldwin's 1934, the facts pleaded are sufficient to entitle plaintiff to any relief, the complaint will be held good as against a demurrer. This proposition has been affirmed so many times that citation of authority is unnecessary.

While much of appellant's complaint is surplusage and immaterial, we do think sufficient facts are alleged which show that he is entitled to recover under his contract the amount of the taxes paid, and for that reason we think the trial court erred in sustaining appellee's demurrer thereto.

Judgment reversed with instruction to the trial court to set aside the judgment herein rendered and to overrule appellee's demurrer to appellant's complaint, and for further proceeding not inconsistent with this opinion.

NOTE.—Reported in 39 N. E. (2d) 125.