**Donald SIDDALL, et al., Appellants (Plaintiffs Below),**

v.

**CITY OF MICHIGAN CITY, Indiana, et al., Appellees (Defendants Below).**

**No. 3–185A3.**

Court of Appeals of Indiana, Third District.

Nov. 25, 1985.
Rehearing Denied Jan. 14, 1986.

Craig V. Braje, Michigan City, for appellants (plaintiffs below).

Steven C. Snyder, City Atty., Michigan City, for appellees (defendants below).

HOFFMAN, Judge.

Appellants, members of a class of police officers employed by or retired from the Michigan City Uniform Patrol Division, bring this appeal from the grant of a summary judgment in favor of Michigan City. The appeal presents one issue for review: whether the trial court erred in granting a summary judgment in favor of Michigan City on the basis of laches and failure to exhaust administrative remedies.

The standard of review of a summary judgment requires the appellate court to ascertain that no genuine issue of material fact exists and that the law was correctly applied to the facts of the case. In making this determination, the facts are viewed in the light most favorable to the opponent of the motion. *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677, *reh. denied, trans. denied.*

The police officers, through their representative the Fraternal Order of Police (F.O.P.), and the City through the Board of Public Works and Safety entered into a collective bargaining agreement in 1979 to become effective January 1, 1980. The Common Council of Michigan City approved the agreement and adopted it as an ordinance. The agreement was amended in part in 1982. The relevant sections of the agreement, as amended, state:

"ARTICLE VI: GRIEVANCE PROCEDURE

Should any employee covered by this agreement have any grievance, dispute or complaint covering his or her employment or application of this agreement, he may submit a written, signed petition to the F.O.P. grievance committee within five (5) days of his/her grievance, dispute, or complaint. There shall be an earnest effort by the employee, the F.O.P. grievance committee and the employer to settle the matter promptly. A. If a petition has been constituted to be a grievance by the F.O.P. grievance committee the F.O.P. grievance committee shall, with the petitioning employee present, submit the grievance to the Police Chief for settlement and/or adjustment.

B. If the F.O.P. grievance committee and the Police Chief and employee cannot come to a satisfactory decision within five (5) business days, the grievance shall then be submitted to the Board of Public Works and Safety for settlement.

C. If the grievance has not been settled by the Board of Public Works and Safety within fifteen (15) business days, it shall then be submitted to fact-finding unless

the F.O.P. and the Board mutually agree to a longer period for settlement. Probationary employees and trainees are expressly excluded from the provisions of this grievance procedure.

D. This section is not intended to supplant in any respect the jurisdiction of the Police Merit Commission.

\* \* \* \* \* \*

"ARTICLE XII: MAXIMUM WORKING HOURS

No officers shall work more than eight (8) hours in any twenty-four (24) hour period nor more than forty (40) hours in any given week unless compensated at overtime rate as described in Article XIII, Section A.

"ARTICLE XIII: SUPPLEMENTAL BENEFITS

A. OVERTIME: All police officers shall receive overtime compensation at time and one half for all authorized hours worked past eight (8) hours per day or forty (40) hours per week, inclusive of training and departmental meetings. This compensation shall be paid at One and one/half (1½) times the individual base rate of pay or at One and one/half hours (1½) accumulated time for each overtime hour worked."

In 1982, Article XIII was amended to provide:

"ARTICLE XIII: SUPPLEMENTAL BENEFITS

A. OVERTIME: All police officers shall receive overtime compensation at time and one-half for all authorized hours worked past eight (8) hours per day or forty (40) hours per week. Training time and time spent given [sic] legal testimony shall be compensated at straight time for all police officers."

Prior to 1980, the officers had no written agreement with the City. However, the Common Council did adopt an ordinance each year for salary and overtime appropriations.

Beginning in 1977, pursuant to an oral directive by the police chief, all commanders in the uniform division had to report to

work thirty minutes prior to commencement of their regular shift. All officers in the division had to report fifteen minutes early. The purpose of the early reporting was to assure the presence of all officers on time for the shift change and to allow time for conveying information from the departing shift to the entering shift. The requirement of early reporting was mandatory. During the years 1977 through 1979, even though there was no written agreement between the officers and Michigan City, there was in effect an established practice which set maximum work hours for police officers at eight hours per day with overtime being paid for hours worked beyond the eight hours.

In 1980, the above-referenced agreement became effective, and on July 31, 1982, the police chief issued a written order entitled "Duty Hours" requiring the fifteen and thirty minute early reporting.

Subsequent to the written directive of July 31, 1982, the officers began to turn in overtime request payment slips for the extra fifteen and thirty minute periods. Submission of such an overtime slip was the normal procedure for requesting overtime pay.

When overtime was not paid as requested for the fifteen and thirty minute periods, the F.O.P. president indicated to the police chief that the officers took issue with the denial of overtime. The chief of police indicated he did not consider these fifteen and thirty minute periods compensable as overtime. No written grievance was ever filed concerning the denial of the overtime payments, and the officers instituted this action for payment for the fifteen and thirty minute time periods from January 1977 to time of filing, September 21, 1982. The plaintiffs filed a motion for a summary judgment as to the issue of liability of the City. The City apparently opposed the motion although no written opposing document is within the appellate court's copy of the record. A hearing was held on the motion. The trial court then granted summary judgment in favor of Michigan City finding the claim for wages prior to 1980

was barred by the statute of limitations, found at IND. CODE § 34-1-2-1.5,[1] and the action as a whole was barred by the failure of plaintiffs to exhaust administrative remedies and the doctrine of laches.

▇ In granting the summary judgment, the trial court found the officers had not exhausted their administrative remedies since they had not followed the grievance procedure set out in the collective bargaining contract. The plaintiffs, in their motion to correct error and on appeal, argue this case comes within an exception to the exhaustion requirements. The City argues this case is not within an exception to such requirements. However, the exhaustion of administrative remedies doctrine does not apply in this case. *See, Roark v. City of New Albany* (1984), Ind.App., 466 N.E.2d 62. Rather this case involves a collective bargaining labor contract which addresses grievance procedures. The issue then is whether or not the grievance procedure provided in the contract is mandatory and thus required before a judicial action may be properly maintained.

The agreement between the City and the officers provides that an employee "may submit" a written signed petition to the grievance committee. In construing this contract term, words must be given their usual and ordinary meaning unless there is

clear intent that they are to be construed otherwise.

> *Smith v. Sparks Milling Company* (1942), 219 Ind. 576, 39 N.E.2d 125, *reh. denied*;
>
> *Marksill Specialties, Inc. v. Barger* (1981), Ind.App., 428 N.E.2d 65, *reh. denied, trans. denied* (1982).

Webster's Third New International Dictionary defines the term "may": have permission to; have liberty to. Black's Law Dictionary defines "may": an auxillary verb qualifying the meaning of another verb by expressing ability, competency, liberty, permission, possibility, probability or contingency. Applying the plain and ordinary meaning of may to the contract term which provides that the employee "may submit" a written grievance to begin a stated grievance procedure, the grievance procedure set forth in the contract is not mandatory, but permissive. An aggrieved employee would be permitted to follow such procedure to settle a dispute, but would not be required to do so.[2]

Thus, the summary judgment in favor of Michigan City cannot be sustained on the grounds of failure to exhaust administrative remedies. The administrative exhaustion doctrine does not apply and the contract provisions for grievance procedure are permissive, not mandatory.

---

1. Appellants did not assert a claim of error as to this ruling either in their motion to correct error or their appeal brief. Therefore, the issue is not addressed in this opinion.

2. This construction of the term "may" is in accord with that found in *U.S. v. Lexington Mill & E. Co.*, 232 U.S. 399, 34 S.Ct. 337, 340, 58 L.Ed 658 (1914) construing the term "may" in a statute as meaning "any possibility" since words must be given their usual and ordinary meaning when construing a statute; and *Filtrol Corporation v. Loose*, 209 F.2d 10 (10th Cir.1953) *reh. denied* (1954) construing a written mining lease which stated: "Lessors may terminate and cancel ..." and "... lessee may pay sais sum ...," with the court finding the word may, while occasionally meaning "must," ordinarily is used to denote permission or discretional and not mandatory conduct.

   In contrast to such interpretations, is the meaning given the term "may" when a collective bargaining contract is subject to construction

   and the contract provides arbitration procedures. A special status has been afforded arbitration provisions by the United States Supreme Court in its Steelworkers Trilogy: *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus where the collective bargaining contract mandates a grievance procedure by providing the procedure "will" be followed, and then provides that if such procedure is not successful, the issue "may" be submitted to arbitration, the word "may" has been held to mean that either side may require the issue be submitted to arbitration. *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418 (5th Cir.1962), *reh. denied* (1963).

The appellants also argue that their suit is not precluded by the doctrine of laches. The application of the defense of laches is within the sound discretion of the trial court. *State ex rel. Crooke et al. v. Lugar et al.* (1976), 171 Ind.App. 60, 354 N.E.2d 755, 765–766, *reh. denied, trans. denied,* and will be reversed only for abuse of that discretion. *Pickett v. Pickett* (1984), Ind.App., 470 N.E.2d 751.

Laches consists of three elements, all of which must be shown in order to prove the defense and preclude the assertion of the claim. The elements are: (1) plaintiff's inexcusable delay in asserting rights, (2) plaintiff's implied waiver arising from knowing acquiescence in existing conditions, and (3) prejudice to the defendant due to the delay. *State ex rel. Crooke v. Lugar, supra,* 354 N.E.2d at 765. The doctrine of laches may bar the party's right to assert a claim before the running of the applicable statute of limitations if the laches are of such character as to work an equitable estoppel which contains the additional element of reliance by the defendant. *Pickett v. Pickett, supra,* 470 N.E.2d at 754–755. However, delay alone is insufficient to bar the claim under the doctrine of laches. *Frazier v. State* (1975), 263 Ind. 614, 335 N.E.2d 623.

To sustain their defense of laches, the appellees argue they are prejudiced by the delay in asserting the right to overtime for the fifteen and thirty minute periods in that funds have not been budgeted to cover such overtime payments. By statute the legislative body of the city is to fix the annual compensation for police officers and make appropriations for same. IND. CODE §§ 36–4–6–18 and 36–8–3–3(d).[3] The Common Council is the legislative body charged with this responsibility. *City of Gary v. State ex rel. Paris* (1980), Ind. App., 406 N.E.2d 1247, 1248, *reh. denied, trans. denied* (decided pursuant to the 1971 Code).

In this case, the Common Council appropriated funds for the payment of what was termed the "salaries and wages" for the police each year. The copies of the ordinances for appropriations from 1977 through 1983 are in the record. Testimony at the hearing on the motion for summary judgment indicated the appropriations included funds for overtime but such appropriations did not include funds for payment of the fifteen and thirty minute periods. The contract between the officers and Michigan City provides for a base salary per position within the department, plus overtime compensation for all authorized hours worked past eight hours per day or forty hours per week. Therefore all these sections of the contract refer to annual compensation or salary the setting of which is within the scope of responsibility of the Common Council. Once such compensation is determined by ordinance, the City has a mandatory duty to pay such even if no funds are appropriated for same. *City of Gary v. State ex rel. Paris, supra,* 406 N.E.2d at 1249. The City would not be able to defeat a claim for such compensation based on grounds that no funds had been appropriated for same. *City of Lafayette v. Keen* (1943), 113, Ind.App. 552, 48 N.E.2d 63, *reh. denied, trans. denied.* Therefore, reliance by the City on the lack of appropriated funds to show prejudice sufficient to sustain the defense of laches and preclude the officers' claims for over-

---

**3.** The Indiana Code sections provide:

"36–4–6–18 Purposes of ordinance, order, resolution or motion

Sec. 18. The legislative body may pass ordinances, orders, resolutions, and motions for the government of the city, control of the city's property and finances, and the appropriation of money.

"36–8–3–3 Organization of safety boards; appointment of police officers, firefighters and other officials

\*　　\*　　\*　　\*　　\*　　\*

(d) The annual compensation of all members of the police and fire departments and other appointees shall be fixed by ordinance of the legislative body before August 2 of each year for the ensuing budget year. The ordinance may grade the members of the departments and regulate their pay by rank as well as by length of service. If the legislative body fails to adopt an ordinance fixing the compensation of members of the police or fire departments, the safety board may fix their compensation, subject to change by ordinance."

time cannot be sustained if the fifteen and thirty minute periods come within "authorized hours worked" as stipulated in Article XIII of the contract. As the trial court did not address this issue, no opinion is offered herein on the matter.

Consequently, the summary judgment in favor of Michigan City based on the doctrine of laches is reversed, no prejudice to the defendant having been shown.

Reversed.

STATON, P.J., and GARRARD, J., concur.