No. 34,037

THE G. S. JOHNSON COMPANY, *Appellant*, v. THE N. SAUER MILLING COMPANY, *Appellee.*

(84 P. 2d 934)

862

Opinion filed December 10, 1938.

*Glenn Porter, Getto McDonald, Dwight S. Wallace* and *William Tinker,* all of Wichita, for the appellant.

*Chester Stevens,* of Independence, for the appellee.

*Robert C. Foulston, Carl T. Smith,* both of Wichita, *B. I. Litowich,* of Salina, *Morelock & Lamb,* of Washington, D. C., and *Neal Sullivan,* of Newkirk, Okla., as *amici curiae.*

The opinion of the court was delivered by

ALLEN, J.: This was an action upon a written contract to recover money representing a part of the contract price of flour purchased by the plaintiff from defendant, and claimed by plaintiff to be money paid to defendant by the plaintiff to cover the processing tax imposed on defendant by the agricultural adjustment act and amendments thereto. A motion to strike was sustained. Plaintiff appeals.

As the material stricken from the petition involved the merits of the cause of action, the order to strike is an appealable order. (*McKenzie v. Ruggles Construction Co.,* 129 Kan. 759, 284 Pac. 407; *Norman v. Railway Co.,* 101 Kan. 678, 168 Pac. 830; *Whitlaw v. Insurance Co.,* 86 Kan. 826, 122 Pac. 1039.)

The petition was in two counts.

For its first cause of action plaintiff, in its petition, alleges that the plaintiff, on November 6, 1935, entered into a written contract with the defendant for the purchase of 2,000 barrels of wheat flour, as shown by a copy of the contract attached to the petition and marked exhibit "A."

That part of the written contract pertinent to the present controversy is as follows:

"The N. Sauer Milling Co., Cherryvale, Kansas . . . seller—

"Agrees to sell to G. S. Johnson Company, of Davenport, Iowa, buyer, and buyer agrees to buy from seller the following commodities (to be manufactured), on the terms and conditions and subject to the agreements stated below and/or on the back hereof, F. O. B. carrier at shipping point, freight charged to be prepaid or allowed by seller to Davenport, Iowa. (Specify destination point.)

.    .    .    .    .    .    .    .    .    .    .    .    .    .

|  |  |  |
|---|---|---|
| 2,000 bbl. flr. bulk, | Cherry Bell | $6.45 |
| | Rainbow | 6.25 |
| | Sauers Best | 6.15 |
| | Champion Bakers | 6.55 |
| | Cream of Patents | 6.65 |

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Taxes: The prices named in this contract include the processing taxes as now imposed by the United States on the processing of the commodities used in the manufacture of the products covered by this contract, . . . Any decrease in the processing taxes as now or hereafter imposed by any legislative or administrative branch of the United States shall inure to the benefit of the buyer, if, as and when the benefit of such decrease has been actually realized and secured by the seller, and shall be credited against the contract prices named in this contract to the extent, and only to the extent, that the grain used in the manufacture of the product covered by his contract is milled after the decrease in the processing tax takes effect, and to the extent that the seller is thereby definitely relieved from the processing tax; provided, that no such decrease shall be credited on the prices of feeds for feeding livestock. If any such decrease shall be measured per bushel of grain the amount of the tax to be deducted from the price of any product produced from such grain shall be computed according to the conversion factor established for such product by the Secretary of Agriculture."

The petition alleges that the defendant is engaged in the milling business and is a "first domestic processor" as defined in the agricultural adjustment act and regulations made pursuant thereto; that the defendant milling company, when the processing tax became effective "added to the then prevailing and existing price of wheat flour a separate and distinct item of $1.38 per barrel"; that the amount of $1.38 per barrel was added by the defendant for the express purpose of collecting from the plaintiff a fund of money sufficient and for the purpose of paying the processing tax and to place defendant "in funds with which to pay the said processing tax."

The petition alleges that an action was instituted in the district court of the United States for the district of Kansas by the defendant to enjoin the collector of internal revenue from collecting the processing taxes from the defendant, and that pursuant to said petition an injunction was granted, and from the 1st of May, 1935,

until the 7th of January, 1936, under and pursuant to said injunction the defendant did not pay any processing tax to the United States government, but used the funds by placing it with the clerk of the court or in the bank at the direction of the clerk to act as a bond upon the temporary injunction.

The petition further alleges that after the decision by the supreme court of the United States on January 6, 1936, in *United States v. Butler*, 297 U. S. 1, 56 S. Ct. 312, 80 L. Ed. 477, holding the agricultural adjustment act unconstitutional, the United States district court for the district of Kansas ordered all moneys so placed with the clerk or with a bank as bond, returned to the defendant, so that from and after May 1, 1935, the defendant paid no processing tax to the United States government..

The petition refers to the act of congress of June 22, 1936 (the windfall tax), and alleges that such act is, in effect, a legislative determination that the funds returned to defendant constituted an unjust enrichment of defendant. It is alleged that the defendant has failed and refused, and still refuses, to account and pay to the plaintiff the respective amount and portion of the fund belonging to the plaintiff.

In the second count plaintiff refers to and incorporates paragraphs one to twenty of the first cause of action as part of the second cause of action, and alleges that the processing tax having failed, and the money having been returned to the defendant, that the defendant stands in the position of a fiduciary towards the plaintiff, and that it would be inequitable and unconscionable for the defendant to retain the fund, which does not belong to it, but which belongs to the plaintiff, and—

"that by reason of the aforesaid, there exists and is an express trust, and that said funds constitute a trust fund which should be administered in this, a court of equity. If it should be held and determined by the court that said written contract should not be construed as establishing an express trust, then the plaintiff alleges, in the alternative, that there is a resulting or an implied trust, and that the defendant should be held and declared to be the trustee."

Plaintiff prays for an accounting, that defendant be decreed to be a trustee, and asks restitution of the funds due the plaintiff.

Assuming that the order to strike is equivalent to an order sustaining a demurrer to the petition, we are confronted at the outset with the effect to be given to the demurrer. Ordinarily a demurrer admits the truth of all matters well pleaded. But where the action is based on a written contract, a copy of which is attached to the pe-

tition, a demurrer does not admit plaintiff's construction of the contract. In such case a demurrer admits the existence of the writing but does not admit it has the meaning or legal effect ascribed to it by the pleader, these being matters of law to be determined by the court upon construction of the language employed in the instrument.

In *Rettiger v. Dannelly*, 91 Kan. 61, 136 Pac. 942, a copy of a contract, and also a copy of a surety bond, were attached to the petition as exhibits and made a part thereof. The tenor and legal effect of the contract and bond were pleaded. The court stated that the allegation of the petition as to the legal effect of the bond "is not deducible from the language of the bond, but is extraneous thereto and inconsistent therewith." The court further stated: "This portion of the petition, therefore, pleaded in connection with the contract or bond is not to be taken as true on the hearing of a demurrer to the petition. Where a written contract is unambiguous in its terms, its interpretation or construction is a matter of law for the court. (*Warner v. Thompson*, 35 Kan. 27, 10 Pac. 110.)" (p. 63.)

In *Dillon v. Barnard*, 21 Wall. 430, 22 L. Ed. 673, it was said:

"The averments of the bill as to the purport and meaning of the provisions of the indenture, the object of their insertion in the instrument, and the obligations they imposed upon the corporation and the trustees, and the rights they conferred upon the plaintiff when his contract was approved, are not admitted by the demurrer. These are matters of legal inference, conclusions of law upon the construction of the indenture, and are open to contention, a copy of the instrument itself being annexed to the bill and, therefore, before the court for inspection. A demurrer only admits facts well pleaded; it does not admit matters of inference and argument, however clearly stated; it does not admit, for example, the accuracy of an alleged construction of an instrument, when the instrument itself is set forth in the bill, or a copy is annexed, against a construction required by its terms; nor the correctness of the ascription of a purpose to the parties when not justified by the language used. The several averments of the plaintiff in the bill as to his understanding of his rights, and of the liabilities and duties of others under the contract, can, therefore, exert no influence upon the mind of the court in the disposition of the demurrer." (p. 437.)

See, also, *Johnson v. Igleheart Bros.*, 95 F. 2d 4; *St. Louis, etc., Railroad v. U. S.*, 267 U. S. 346, 45 S. Ct. 245, 69 L. Ed. 649; *United States v. Ames*, 99 U. S. 35, 25 L. Ed. 295; *Interstate Land Co. v. Maxwell Land Co.*, 139 U. S. 569, 11 S. Ct. 656, 35 L. Ed. 278.

Applying these principles to the case before us, it is apparent the court must construe the contract upon which the alleged cause of

action is based. The rights of the plaintiff are to be determined by the contract and not by the inferences, deductions or legal conclusions set out in the petition. As stated in *Kretchmar v. City of Atchison,* 133 Kan. 198, 299 Pac. 621, "the demurrer admitted issuable facts, but did not admit the naked conclusions of the pleader."

Looking to the contract, it is clear the parties were dealing at arm's length, and there is nothing therein to justify the assertion that there was a fiduciary relation between the seller and the buyer. The contract contains no provision that the buyer was putting the seller in funds with which to pay the tax. The relationship of the parties being that of seller and buyer, and there being no charge of fraud, misrepresentation, duress or mistake, it is evident a strict application of the rules of pleading would eliminate any question of a trust from the case. But assuming the petition on its face states a cause of action on any theory, we will examine the questions raised.

The contract expressly provided that the prices named in the contract included the processing tax as then imposed. No price was fixed to which was added the tax. The price included the tax. The tax was not billed or set out as a separate item. It was a composite price.

In the case of *Lash's Products Co. v. United States,* 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251, it was held the tax was a part of the price and could not be recovered by the purchaser. The court said:

"This is a suit to recover the amount of certain taxes paid under the revenue act of 1918 (act of February 24, 1919, ch. 18, sec. 628, 40 Stat. 1057, 1116). By section 628 there is imposed 'on soft drinks, sold by the manufacturer, . . . in bottles or other closed containers, a tax equivalent to ten percentum of the price for which so sold.' This tax was paid by the petitioner, calculated at ten percentum of the sum actually received by it for the goods sold. But the petitioner had notified its customers beforehand that it paid the ten-percent tax and it contends that in this way it passed the tax on and that the true price of the goods was the sum received less the amount of the tax. The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. (*Heckman & Co. v. I. S. Dawes & Son Co.,* 12 F. 2d 154.) The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. . . . The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price, and if the statute were taken literally, as there would be no reason for not taking it if it were now passed for the first time, there might be difficulty in accepting the commissioner's distinction even if the tax were made a separate item of the bill. But if, in view of the history in the solicitor

general's brief, we assume with him that the practice of the commissioner has been ratified by congress, we agree with his argument that the petitioner must take the privilege as it is offered. It did not bill its tax as a separate item, and the commissioner's regulations notified it that 'if the sales price of a taxable beverage is increased to cover the tax, the tax is on such increased sales price,' although they purported to make a different rule 'when the tax is billed as a separate item.' There has been some difference of opinion in the lower courts, but we regard the interpretation of the law as plain." (pp. 175, 176.)

In *O'Connor-Bills, Inc., v. Washburn Crosby Co.*, 20 F. Supp. 460, where the court was confronted with a similar question, it was said:

"It is to be noted in the first place that the tax passed by the defendant on to the plaintiffs was buried in the contract price for the processed commodity. The defendant became subject to and liable for the payment of the tax. The tax was a heavy one under a flexible statute that permitted an increase or a decrease at the discretion of certain officers of the government.

"The defendant as a precaution anticipated an increase and specifically provided that in such event, and independently of the contract price, the purchaser should then put the defendant in funds to meet such possible increase. On the other hand, the defendant agreed, because of the other alternative, that, in the event of a decrease in said tax, the several plaintiffs and others in like relationship should have the benefit thereof. Note the language: 'Any decrease in the processing tax, as now or hereafter imposed by the United States, shall inure to the benefit of the buyer and be credited against the contract prices named in this contract.'

"This constituted an agreement between the parties as to the procedure to be followed if the tax should be decreased. The decrease was to 'be credited against the contract prices named in this contract.'

"Undoubtedly it was then believed that the decrease might be authorized before the execution of the contract and the payment of the amount due thereon by the plaintiffs. The agreement did not provide for a refund if the contracts had been executed or fully carried out, nor neither did it provide for a credit or refund in the event the tax was held illegal. The payments made by the plaintiffs were entirely voluntary. The plaintiffs were not deceived nor overreached in making the payment; therefore they lost all title and legal interest in the funds thus paid. (*Shell Oil Co. v. Miller, Inc.*, (C. C. A.) 53 F. 2d 74; *Wourdack v. Becker, Collector*, (C. C. A.) 55 F. 2d 840; *Lash's Products Co. v. U. S.*, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251."

In *Johnson v. Igleheart Bros.*, 95 F. 2d 4, the court said:

"Plaintiff evidently relies largely upon the decision of the New York Court of Appeals in *Wayne County Produce Company v. Duffy-Mott Company, Inc.*, 244 N. Y. 351, 155 N. E. 669, which, no doubt, lends support to his theory. We think, however, it is distinguishable from the instant case. In that case there was no written contract involved and the amount paid as tax and held to be recoverable was not included in the sale price of the product, but was in addition thereto and billed as a separate item. The court, 244 N. Y. 351, on

page 353, 155 N. E. 669, said: 'This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller.'

"In the instant case the amount of the alleged tax was included and absorbed in the price named in the contract and paid by the buyer, and we think it was a price to be paid at all events. It is certain that the only protection afforded the buyer was a refund of any reduced price of the contracted article, which might result in the decrease of the processing tax. In the recent case of *O'Connor-Bills, Inc., v. Washburn Crosby Company*, D. C. W. D. Mo., August 31, 1937, 20 F. Supp. 460, 462, which was an equitable action to recover an amount paid by the purchaser of goods as a processing tax, but not paid by the seller to the government, the district court held: 'The agreement did not provide for a refund if the contracts had been executed or fully carried out, nor neither did it provide for a credit or refund in the event the tax was held illegal. The payments made by the plaintiffs were entirely voluntary. The plaintiffs were not deceived nor overreached in making the payment; therefore, they lost all title and legal interest in the funds thus paid.'" (p. 9.)

See, also, *Cohen v. Swift & Co.*, 95 F. 2d 131; *Heckman & Co. v. Dawes & Son Co., Inc.*, 12 F. 2d 154; *Golding Bros. Co. v. Dumaine*, 93 F. 2d 162; *Casey Jones, Inc., v. Texas Textile Mills*, 87 F. 2d 454; *Planters Co. v. Brown-Murphy Co.*, 128 Pa. Super. Ct., 239, 193 Atl. 381; *Liggett & Meyers Co. v. U. S.*, 299 U. S. 383, 57 S. Ct. 239, 81 L. Ed. 294; *Coppock v. Nichols Inv. Co.*, 146 Kan. 372, 60 P. 2d 701.

The case of *Refining Co. v. Oil Co.*, 104 Kan. 719, 180 Pac. 807, relied upon by the plaintiff, involved the right of set-off against an assignee of an account. Whether or not the price at which the merchandise was sold was a composite price was not discussed by the court. That question is of controlling importance here.

In the case before us the contract was entered into on November 6, 1935, long after the processing tax became effective. The only price mentioned in the contract was a price in gross per barrel. Evidently that price included the ad valorem taxes, the cost of milling, selling, insurance, etc. The tax was measured not on the flour, but upon the wheat. The tax imposed was thirty cents per bushel of wheat of sixty pounds, computed and fixed at $1.38 per barrel of flour. It is clear the item of the tax was absorbed in the total or composite price to be paid for flour sold.

The contract did not provide for a credit or refund to the buyer in the event the tax was held illegal. This contingency was not in the contract. It is not contended there was fraud or mutual mistake, and no valid reason has been suggested why the agreement should not be enforced as written.

Plaintiff prays that the defendant be compelled to make restitution, as it would result in unjust enrichment of the defendant to keep the money. On this question the comment of the court in *Johnson v. Igleheart Bros.*, supra, is pertinent:

"Plaintiff also seeks to sustain his position from the standpoint of equity, and urges that a denial of his claim will result, at his expense, in an unjust enrichment of the defendant. We do not think we are called upon to deal with such a theory. The contracts called for the delivery of the flour at various times over an extended period, and considering the nature of plaintiff's business, it is not an unreasonable assumption that whatever amount was included in the contract price as processing tax, was passed on to those with whom it dealt. There is, of course, no allegation in the pleadings to this effect, but in the absence of an allegation to the contrary, how can this court say, as between the parties hereto, that the defendant has money, even if it be conceded that the same was collected as a processing tax, which belongs to the plaintiff?"

In *U. S. v. Jefferson Electric Co.*, 291 U. S. 386, 54 S. Ct. 443, it was held that a taxpayer suing for refund of automobile accessories tax, must establish by pleading and proof that it has not collected the tax directly or indirectly from its customers.

For the plaintiff to recover it must establish its right to the funds in question. Assuredly if it passed on the tax to its customers it would not, as against the defendant, have a superior equity. In the absence of an allegation that the plaintiff did not collect the amount of the tax from its customers, how can this court say that the funds in suit belong to the plaintiff rather than to the defendant?

The moneys in question were paid by the plaintiff to the defendant in accordance with the terms of a written contract. The payment was voluntarily made with full knowledge of the facts. There is no charge of fraud, coercion or mistake. The rights of the parties are measured by the contract. As we find no basis for the establishment of a trust, and no right to restitution on the ground of a quasi contractual obligation is shown, the action of the trial court in sustaining the motion to strike must be sustained.

The judgment of the trial court is affirmed.