## ZELIGSON v. HARTMAN–BLAIR, Inc., et al.

### No. 2383.

Circuit Court of Appeals, Tenth Circuit.

March 9, 1942.

Roy H. Wasson, of Wichita, Kan. (Chas. L. Yancey, G. C. Spillers, and Kavanaugh Bush, all of Tulsa, Okla., on the brief), for appellant.

Robert C. Foulston, of Wichita, Kan. (George Siefkin, Carl T. Smith, and Foulston, Siefkin, Bartlett & Morris, all of Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action on a claim for loss of a broker's commission. Zeligson, the broker, sought to recover the alleged loss from Hartman-Blair, Inc.,[1] W. L. Hartman, and H. H. Blair.

The trial court sustained a motion to dismiss the amended petition and entered an order dismissing the cause without prejudice. Zeligson has appealed.

In his first amended petition, Zeligson alleged that the owner is a corporation organized under the laws of Kansas and that Hartman and Blair are its principal stockholders; that on June 26, 1939, at Wichita,

---

[1] Hereinafter called the owner.

596

Kansas, T. A. Morgan informed Zeligson that the owner was offering for sale a certain oil and gas lease and inquired if Zeligson could secure a buyer therefor; that on June 28, 1939, Zeligson informed Morgan that he believed he could secure a buyer for the lease but would not attempt to sell it until he had received written authority to sell the lease, setting out the purchase price, terms, and conditions under which the owner was willing to sell; that thereupon, Morgan informed Hartman by telephone that Zeligson believed he could sell the lease and requested written authority to undertake the sale; that Hartman consented to provide such authority; that later on the same day, Morgan presented Zeligson "with written authority to sell" the lease, reading as follows:

"June 28, 1939

Mr. T. A. Morgan, 322 Fourth National Bank Building, Wichita, Kansas.

Re Harbaugh Lease
SW 1/4 Section 25—14S—15W
Russell County, Kansas.

Dear Mr. Morgan: This is your authority to purchase the above described oil and gas lease, together with the equipment which goes with the lease, but not the miscellaneous equipment that belongs to Hartman-Blair Inc. which is used on other leases. The agreed price is on the basis of $150,000 (One Hundred Fifty Thousand Dollars) cash and $150,000 (One Hundred Fifty Thousand Dollars) out of one eighth of seven *eights* 1/8 or 7/8# of the oil. This agreement is for a period of ten days. This letter is your authority to consult Mr. Glen Harley, our *Superientendent* in the Russel area, who will give you all available information.

As we only own one-half of this property, one-half is all we can offer for sale, but will lend our assistance in purchas-

ing the remaining one-half on the same basis.

Yours very truly,
Hartman-Blair, Inc.,
By H. H. Blair,
By W. L. Hartman." [2]

That Zeligson examined the writing and objected to it being addressed to Morgan and to the ten-day limitation therein;[3] that Hartman stated to Morgan that the name of the person appearing in the writing would not affect the authority and that Zeligson could have an extension of time if it became necessary; that it was orally understood between the owner and Zeligson that the price stated in the writing would be the net price to the owner, and that Zeligson should obtain his commission from the purchasers.

That on July 5, 1939, Zeligson procured from Mal Greenberg, J. A. Klapper, and Phil Hellar, a written offer to purchase the lease, signed by M & L Oil Company by Mal Greenberg.[4]

That on July 5, 1939, Zeligson obtained a written promise from Greenberg and Klapper to pay him a commission of $7,500 when the sale and transfer of the lease were completed.

That on July 8, 1939, Zeligson, through Morgan, informed Hartman that Zeligson had procured purchasers who would pay the sum of $50,000 in cash upon consummation of the sale, $25,000 in 6 months, evidenced by a negotiable promissory note adequately secured by a mortgage on property in Kay County, Oklahoma, and $75,000 out of one-eighth of one-half of the seven-eighths working interest of the oil produced from the lease, and would deposit $10,000 earnest money in a local bank pending the approval of title, potential tests, and the preparation of transfer docu-

---

2 Hereinafter referred to as the writing.

3 There is no allegation that Zeligson objected to the terms of the instrument giving authority to purchase instead of authority to sell.

4 The written offer read as follows:
"July 5, 1939.

Dear Mr. Zeligson:

I the undersigned hereby agree to purchase Hartman & Blair's interest in their Harbaugh Lease located in the SW1/4 of Section 25, Township 14S, Range 15W, Russell County, Kansas, containing 160 Acres on which there are 8 producing oil wells for the sum of $75,000.00 cash, and

$75,000.00 out of oil produced on said lease to be paid as follows:

$50,000.00 cash at the time of transfer and $25,000.00 in 6 months from the date of transfer evidenced by a promissory note secured by a first mortgage on oil properties owned by me in Kay County, Oklahoma; and $75,000.00 payable in oil out of 1/8 of 1/2 of the 7/8 oil produced from the above described property.

We further agree to deposit the sum of $10,000.00 as earnest money in a local bank pending completion of test and assignment of the property.
M & L Oil Co.,
By Mal Greenberg."

ments; that Hartman orally agreed to the proposed terms of sale; that on July 10, 1939, the purchasers were ready, able, and willing to deposit the $10,000 as earnest money, take the production test, and complete the sale; that Hartman requested that completion of the sale be deferred until Blair returned to Wichita, and agreed that the sale would be completed immediately upon Blair's return; that consummation of the sale was postponed from day to day at the request of Hartman and Blair until on or about September 19, 1939, when Hartman and Blair orally agreed to have the production test taken and the sale consummated on the following day; that on or about September 20, 1939, Hartman and Blair notified the purchasers that the owner would not consummate the sale.

It will be observed that Zeligson demanded from the owner written authority to sell the lease; that in response to that request, the owner furnished to Morgan the writing, and that Zeligson expressly relies upon that writing as his authority to act as the agent or broker of the owner. While Zeligson in his amended petition characterizes the writing as "written authority to sell * * * the lease" the writing itself is plain and unambiguous and clearly constituted an offer to sell or authority to purchase and did not appoint Zeligson as the agent or broker of the owner to sell the lease. Regardless of the implications of the prior conversation between Morgan and Hartman, the writing expressed the authority which the owner was willing to give.

Zeligson accepted the writing and while he objected to the time limitation and the fact it was addressed to Morgan, he interposed no objection to the provisions which gave authority to purchase rather than authority to sell.

The motion to dismiss admitted all facts well pleaded, but it did not admit the legal effect ascribed by the pleader to the writing. The writing was attached to the first amended complaint as an exhibit and its legal effect is to be determined by its terms rather than by the allegations of the pleader.[5]

Furthermore, the writing of July 5, 1939, provided that Greenberg and Klapper would pay Zeligson the sum of $7,500 commission as broker upon the purchase of the lease, implying that Zeligson was to serve Greenberg and Klapper in the transaction.

We conclude, therefore, that Zeligson did not act as the agent or broker of the owner to sell the lease and was not entitled to recover on the writing of July 5, 1939.

Zeligson, not being a party to the oral agreement between the owner and Greenberg, Klapper, and Hellar, for the sale and purchase of the lease, and having no lien on or special property in the lease, cannot recover damages resulting from the breach of that contract by the owner.[6]

Moreover, the contract being oral, it is unenforceable under the statute of frauds.[7]

The judgment is affirmed.

[5] Equitable Life Assurance Society v. Brown, 213 U.S. 25, 43, 29 S.Ct. 404, 53 L.Ed. 682;

Gould v. Evansville & C. R. R. Co., 91 U.S. 526, 536, 23 L.Ed. 416;

Interstate Land Co. v. Maxwell Land Co., 139 U.S. 569, 577, 11 S.Ct. 656, 35 L.Ed. 278;

St. Louis, K. & S. E. R. R. Co. v. United States, 267 U.S. 346, 349, 45 S.Ct. 245, 69 L.Ed. 649;

Thacher v. Aetna Accident & Liability Co., 8 Cir., 287 F. 484, 486, 28 A.L.R. 1280;

Johnson v. Igleheart Bros., 7 Cir., 95 F.2d 4, 7;

G. S. Johnson Co. v. N. Sauer Milling Co., 148 Kan. 861, 84 P.2d 934, 936.

[6] Sievert v. Wood, 133 Kan. 540, 300 P. 1090, 1092;

Restatement of the Law of Agency, Vol. II, § 372(2), Comment, p. 820.

[7] Gen.Stat. of Kansas, 1935, ch. 33, Art. 1, 33-106;

Engelbrecht v. Herrington, 101 Kan. 720, 103 Kan. 21, 172 P. 715, 718, 719, L.R.A.1918E, 785;

Stahl v. Stevenson, 102 Kan. 447, 844, 171 P. 1164, 1168;

Burns v. Bastien, 174 Okl. 40, 50 P.2d 377, 380;

Woodworth v. Franklin, 85 Okl. 27, 204 P. 452, 459, 27 A.L.R. 590.