No. 35,979

ALLEN O. HENDRICKS, *Appellee*, v. WICHITA FEDERAL SAVINGS AND LOAN ASSOCIATION and JOHN R. CAUTHORN, *Appellants*.

(143 P. 2d 780)

Opinion filed December 11, 1943.

*A. V. Roberts,* of Wichita, and *C. Clyde Myers,* of Kansas City, argued the cause, and *Paul W. Schmidt, Verne Roberts* and *George Hondros,* all of Wichita, were on the briefs for the appellants.

*R. E. Angle,* of Wichita, argued the cause, and *Joseph A. Fuller,* of Wichita, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is the second appearance of this case. (156 Kan. 124, 131 P. 2d 889.) The last trial below resulted in a hung

jury, and the cause is again brought here to determine questions which may be justiciable by intermediate appeal.

Plaintiff's action is one to recover a money judgment against the defendant loan company and also against John R. Cauthorn its vice-president. The basis of the action, in its least controversial aspects, appears to have been about as follows:

Some years ago one Charles L. Morton was a building contractor in Wichita. In the summer of 1939 he had six houses under construction. One of them was being erected at 414 El Pyco street for V. H. Hearing. Hearing had borrowed $3,600 from the defendant loan company, for which he had given a mortgage on the building site. There was the usual arrangement that the loan company would release funds of the $3,600 loan to pay Morton's workmen (and other charges) as the work progressed. Morton seems to have drawn from the loan about $1,200 before the construction of the building had progressed far enough to justify so much of it. In July Morton was short of funds to pay his workmen who had been working part of the time on the Hearing residence and part of the time on the other houses Morton had under construction.

About that time Morton approached this plaintiff, Allen O. Hendricks, for a loan of $1,000. Hendricks was induced to grant it, partly because of an agreement between him and Morton that he should receive half the profits on the construction of the Hearing residence, and partly upon alleged representations and assurances of John R. Cauthorn that Hendricks's money would be perfectly safe; that Morton had a $3,600 credit deposit with the loan company which was to be devoted to the building of the Hearing residence; and that he, Cauthorn, would see to it that checks on the $3,600 fund would only be honored when signed by both Morton and plaintiff.

Relying on these alleged promises and representations, Hendricks loaned Morton the $1,000; but before paying it over, two instruments in writing, Exhibit B and Exhibit A, were executed, one by Morton and Hendricks, and one by Morton and the defendant company. These instruments were couched in the form of letters, and may be summarized thus:

Exhibit B, dated July 14, 1939, signed by Morton, recited that on that date Hendricks had lent Morton $1,000, which money he was using to assist in the construction of a dwelling house at 414 Elpyco. It continued—

"It is understood that I am to repay you this above mentioned sum of money when the house has been completed and accepted by the purchaser, V. H. Hearing. In the event that there remains a profit to me over and above the cost of building the house, it is understood that I am to pay over to you one-half of the said profit in addition to payment of loan above mentioned. If there is no profit, however, I am to be indebted to you only in the sum of $1,000 which in any event, I agree to pay when the full contract price of house has been disbursed by the Wichita Federal and Savings Loan Company pursuant to the mortgage agreement of which you have full knowledge."

This exhibit also recited that—

"The effect of this letter of agreement shall be that of a promissory note, save and except that it shall not be negotiable fo` value, and its maturity shall be that day upon which the balance of the mortgage loan has been disbursed in full.

. . . . . . . . . . . .

(Signed) CHARLES L. MORTON.
All the terms provisions and conditions hereinbefore set out are hereby accepted by me this 14th day of July, 1939.
(Signed) AL HENDRICKS."

Exhibit A, dated July 14, 1939, and signed by Charles L. Morton, is addressed to the defendant loan company and reads.

"In connection with the house I am building at 414 Elpyco, Wichita, Kansas, you are directed to make all checks which are drawn by me against the loan on this property payable to the order of Charles L. Morton and Allen O. Hendricks, jointly, and not otherwise.

". . . if you agree and consent to follow the instructions contained in this letter until further written authority to the contrary by Allen O. Hendricks, would you kindly note your acceptance in the space provided below. . . .

(Signed) CHARLES L. MORTON.
Accepted this 14 day of July, 1939.
THE WICHITA FEDERAL SAVINGS AND LOAN COMPANY,
By (Signed) JOHN R. CAUTHORN,
Its Vice-President."

As so often happens, the foregoing arrangements did not turn out as expected, and plaintiff brought this action alleging some of the facts summarized above, and also alleging that plaintiff was unaware of the financial arrangements between Morton and the loan company; that unknown to him Morton was insolvent on and prior to July 14, 1939; that Cauthorn, vice-president of the loan company, sent for plaintiff on July 14, 1939, and that—

"Cauthorn represented to this plaintiff that his money would be absolutely safe, that there was no way that plaintiff could lose his money, because the defendant Morton, had on deposit with said loan company the sum of $3,600 and would be turned over to the said Morton which was false and untrue and

known by said defendants to be false and untrue and made for the purpose of deceiving this plaintiff and with intention that the plaintiff act thereon; and that plaintiff did believe said statements to be true and relied thereon to his damage as herein set forth; that in truth and in fact there was only $2,600 in said loan, it being the Hearing loan on a dwelling house to be constructed for Mr. Hearing at 414 El Pyco and said $2,600 did not belong to the defendant Morton, and it in fact was the money of Mr. Hearing which was known to the defendants but unknown to this plaintiff."

Plaintiff also alleged that on July 14, 1939, defendants knew that Morton was insolvent and had not paid his workmen, and that Morton's affairs had reached a point where it was impossible for him to proceed further. without money, and that defendant loan company perpetrated the foregoing fraud on plaintiff to enable it to recoup some of its loss in its dealings with Morton—

"Well knowing that the plaintiff's one thousand dollars would go into said houses on which said defendant loan company held mortgages and that it would benefit thereby to the extent of plaintiff's loss, and knowing that plaintiff's money aforesaid would be a total loss to plaintiff."

Plaintiff also alleged that defendant Cauthorn stated to plaintiff that "he would personally guarantee the return of plaintiff's money," and stated that "no money would be drawn from the Hearing loan unless the checks were made payable to the defendant, Morton, and this plaintiff;" and he alleged that Cauthorn, vice-president, signed the acceptance as set out in Exhibit A; and in reliance thereon plaintiff had loaned the $1,000 to Morton.

Plaintiff further alleged that defendants had no intention of complying with the terms of Exhibit A on which they had written their acceptance, and that on the same day they did pay money out of the Hearing loan after executing that acceptance and after plaintiff had paid the $1,000 to Morton, without the knowledge and consent of plaintiff and for the purpose of cheating and defrauding this plaintiff.

Plaintiff also alleged that defendant Cauthorn falsely represented that plaintiff would get his money from the Hearing loan "regardless of liens or anything else," and that plaintiff relied thereon to his damage in the sum of $1,000. Plaintiff also alleged that Morton had assigned all his interest in the Hearing building contract (and other building contracts) to the defendant loan company. Plaintiff concluded his petition with a prayer for judgment for $1,000—adding that by an order of court requiring him to elect whether to proceed for breach of contract or in tort he elected to proceed in tort.

When the cause came on for hearing at the last trial, on May 3, 1943, defendants' answer and plaintiff's reply had long been on file. But on motion of defendants' counsel the trial court permitted their answer to be withdrawn, to enable their counsel to file an objection to the introduction of testimony and to file a demurrer to plaintiff's petition, and to file a motion to strike out of the petition all the allegations of fraud and conspiracy and any allegations tending to state a cause of action in tort, and particularly all such allegations as tended to charge R. M. Cauthorn (president of the defendant company) with acts of fraud, conspiracy or in tort or in contract, because he (R. M. Cauthorn) had theretofore been discharged from liability by order of court. As a further ground for the motion to strike, it was pleaded that the allegations of fraud, conspiracy and tort were at variance with plaintiff's petition, and that such variance was shown in Exhibit B.

In defendants' objection to the introduction of evidence it was urged that it would vary the terms of Exhibits A and B, and that any evidence on the theory of fraud would be contrary to the contracts set out in those exhibits. Defendants' demurrer to the petition was based on the point that it did not state a cause of action and because there was misjoinder of causes of action and misjoinder of parties.

The trial court granted defendant's motion to withdraw their answer, and to file their objections and demurrer. And after argument, the court sustained defendants' objection to the introduction of evidence so far as it related to R. M. Cauthorn, and also as to conspiracy. In other respects defendants' motion and demurrer were overruled. Their answer and plaintiff's reply were refiled, and the trial proceeded before a jury. Plaintiff's evidence was substantially in accord with the material allegations of his petition, although on cross-examination it was brought out that he had not been altogether ignorant about the facts of the $3,600 loan having been made to Hearing and not to Morton when he loaned the latter the $1,000.

Defendants bring the cause here for appellate review on such phases of the lawsuit as can or should be decided before the parties are put to the expense of another jury trial.

And, first, as to the trial court's rulings on defendants' motions to strike, it is well settled that such motions are addressed to the trial court's discretion. (*Sramek v. Sklenar,* 73 Kan. 450, 85 Pac. 566, syl. ¶ 2; *Davies v. Lutz,* 107 Kan. 199, 191 Pac. 485.) When a motion

to strike is sustained it may so affect or impair the pleader's cause of action or defense that the ruling is in effect a final order for which the civil code gives a right of appeal. (G. S. 1935, 60-3302, 60-3303; *Grain Co. v. Coöperative Association*, 109 Kan. 293, 198 Pac. 964, syl. ¶ 4; *G. S. Johnson Co. v. N. Sauer Milling Co.*, 148 Kan. 861, 84 P. 2d 934.) But the converse of such ruling has no such consequence. The overruling of a motion to strike may leave some surplus, immaterial or redundant matter in the pleading, but it does not strip the pleader of his cause of action or defense. In short it is not a final order which will authorize an intermediate appeal. Thus in *Whitlaw v. Insurance Co.*, 86 Kan. 826, 122 Pac. 1039, it was held:

"An order overruling a motion to strike out parts of an answer, which does not involve the merits nor determine the action, is not appealable, and can only be reviewed in this court after final judgment in the action." (Syl. ¶ 1.)

In *Harris v. Morrison*, 100 Kan. 157, 163 Pac. 1062, where error was assigned on the overruling of defendant's motion to strike some allegations of plaintiff's petition it was said:

"The petition may have contained unnecessary allegations, and some of the allegations may have been been set out with unnecessary prolixity, but they did not prejudice any substantial right of the defendant. He was fully informed of the nature of the plaintiff's cause of action. It was within the sound discretion of the trial court to refuse to strike out any part of the petition on the request of the defendant. (citations.) Even if some of the allegations should have been stricken out, the refusal of the court to strike them out was not sufficient error to warrant a reversal of the judgment. (Civ. Code, § 581.)" (p. 159.)

Touching the error assigned on the overruling of defendants' demurrer to the amended petition, we think that whatever criticisms might be directed against the pleading as a work of the pleader's art, it certainly does state a cause of action. It sufficiently states that plaintiff was induced, in part at least, to lend his $1,000 on the misrepresentation of John M. Cauthorn, vice-president of the defendant loan company, that Morton had a credit deposit of $3,600 with the loan company, when in fact he had no such credit, and that while the original credit loan was for $3,600, it had been made to Hearing, whose house Morton had contracted to build, and even that amount had been reduced to $2,600 at the time Cauthorn made that misrepresentation which plaintiff relied on.

It may be true that Cauthorn's verbal assurances that plaintiff's money would be absolutely safe, and that he, Cauthorn, would personally guarantee the return of plaintiff's money would not support

an action for breach of contract against Cauthorn and the defendant company, but this action is one in tort, and what Cauthorn said and did to induce plaintiff to part with his money is competent on the issue of fraud and deceit on which plaintiff's action in tort is predicated.

We hold that the errors assigned on the overruling of the demurrer to the petition and the demurrer to plaintiff's evidence cannot be sustained.

It is insistently argued that the evidence to support this action in tort is inconsistent with the recitals of Exhibits A and B, viewing those exhibits merely as contracts. But their mere tenor as contracts is not their principal evidential significance in this lawsuit. When these exhibits are read in connection with the allegations of the petition and are considered in connection with all the other evidence, they appear to be pertinent incidents of the cause of action plaintiff has tried to state and which he is trying to prove—defendants' alleged fraudulent scheme which induced him to part with his money.

The point of misjoinder of parties and of causes of action is not pressed and needs no discussion.

No material error is made to appear and the judgment is affirmed.