No. 45,263

Nellie M. Mays, *Appellant,* v. Middle Iowa Realty Corp., a Corporation; Mace Siegel and Richard Cohen, d/b/a Macerich Real Estate Company; and Arlan's Dept. Store of Topeka, a Corporation, *Appellees.*

(452 P. 2d 279)

Opinion filed March 8, 1969.

*T. M. Murrell,* of Topeka, argued the cause, and *Kay McFarland,* of Topeka, was with him on the brief for the appellant.

*Mark L. Bennett,* of Topeka, argued the cause, and *Steven J. Kumble,* of New York, New York, *Harry W. Colmery, Clayton M. Davis, Wilbur G. Leonard, Robert A. McClure, Jerry W. Hannah,* and *Frank C. Sabatini,* all of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This was an action initiated under the declaratory judgment act for the purpose of obtaining judicial construction of a written lease and a determination of the rights of the parties thereunder.

Summary judgment was rendered in favor of the defendants and plaintiff has appealed.

The controversy presented is whether, under the terms of the lease, the plaintiff, the lessor, was obligated to sign a mortgage subjecting her fee interest to the payment of a loan to the lessee without being provided with the actual cost of improvements made by the lessee.

The parties have, for the purpose of reducing a somewhat voluminous record, stipulated—

"It is hereby stipulated by the parties that in order to avoid costs in the printing of the entire exhibits which were before the trial court for its consideration that said exhibits disclose the following facts, and this stipulation is made for the purpose of its being used in the record of this case in lieu of the printing of the complete exhibits:

"1. That the plaintiff is and was the owner of the following described real estate situated in the City of Topeka, Shawnee County, Kansas: . . . [A tract consisting of sixteen acres more or less west of Topeka Avenue south is described by metes and bounds.]

"2. That on November 4, 1965, the plaintiff, Nellie M. Mays, and defendant, Middle Iowa Realty Corp., a corporation, executed an Indenture of Lease (Exhibit 1) on the above described property.

"3. That said lease was assigned to defendants Mace Siegel and Richard Cohen, d/b/a Macerich Real Estate Company.

"4. That on November 23, 1965, Macerich Real Estate Company executed a sub-lease to Arlan's Dept. Store of Topeka, Inc. (Exhibit 8).

"5. On February 25, 1966, Plaintiff Nellie M. Mays, Defendant Middle Iowa Realty Corp. and Defendant Arlan's Dept. Store of Topeka, Inc., entered into a certain Tri-Party Agreement (Exhibit 3).

"6. That on April 21, 1967, Plaintiff Nellie M. Mays was furnished with a proposed note and mortgage to John Hancock Mutual Life Insurance Company (Exhibit 4) along with a request that she execute the same.

"7. That prior to the execution of Exhibit 1 the property being leased was impressed with leases from Nellie M. Mays to other persons and Defendant Macerich Real Estate Company negotiated release of those leases as a condition of the execution of Exhibit 1 and the total sum of $71,070.00 was paid by

Defendant Macerich Real Estate Company in consideration thereof. Nellie M. Mays received the sum of $52,500.00 upon the signing of Exhibit 1."

The lease provided for an annual rental payment of $18,000.

The record contains section 33, the material provisions here, of the sixty-five page indenture which covers the lease agreement. Section 33 contains several subsections, all pertaining to the right to mortgage the premises.

Subsection (a) prohibits the lessor from placing any mortgage or encumbrance on her fee interest in the premises for her own special benefit.

Subsection (b) extends mortgage rights to the lessee in the following language:

"Tenant shall have the right, at any time and from time to time, during the term of this lease (as the same may be renewed and extended) to subject the fee interest of Landlord in the Demised Premises, including all rights and easements appurtenant thereto and all buildings and other improvements thereon, at any time and from time to time, to any one or more "Permitted Mortgages" (as defined in paragraph (c) of this SECTION 33) . . ."

Subsection (c) reads in part:

"Landlord and Tenant agree that this lease and the fee interest of Landlord in the Demised Premises shall be, and hereby are made, subject and subordinate at all times to the lien of each first mortgage (herein called a "Permitted Mortgage") which may at any time and from time to time hereafter affect all or any part of the fee of the Demised Premises including all rights and easements appurtenant thereto, . . ."

Subsection (d) (2) provides that each permitted mortgage shall contain a provision exculpating the lessor and lessee from any personal liability for any default under the mortgage.

Subsection (f) defines the terms "mortgage" and "Permitted Mortgage"—

"The terms 'mortgage' and 'Permitted Mortgage,' whenever used herein, shall include both so-called permanent financing and also so-called interim building and construction loan financing and all advances thereunder. All of the provisions hereof shall apply with respect to Landlord's obligations with respect to permanent financing, shall apply as well to such so-called interim building and loan financing and all advances thereunder, and Landlord shall execute any and all agreements and other instruments necessary or desirable in connection therewith. . . ."

A rider was attached to section 33 of the lease, at the request of lessor's attorney, which did to some extent limit the amount of the mortgage. It reads:

"(h) Tenant covenants and agrees that the principal balance of any Permitted Mortgage described herein shall not exceed an amount determined by

multiplying the aggregate number of square feet of floor space in all buildings constructed or under construction on the Demised Premises at such time as said Permitted Mortgage shall be made, renewed, modified, consolidated, replaced, extended or refinanced times the sum of $13.00 per square foot.

"(*i*) Tenant covenants and agrees that the monthly installments of interest and amortization required to be paid under any Permitted Mortgage described herein (excluding any final or terminal payment thereunder) plus the monthly installments of rent payable by the Tenant to the Landlord hereunder plus one-twelfth ($\frac{1}{12}$) of the annual taxes, special and general assessments, water rent, rates and charges, sewer rents and other governmental impositions and charges of every kind and nature which shall during the term of this lease be charged, levied, assessed or imposed upon or with respect to the Demised Premises shall not exceed the aggregate monthly installments of rent (minimum or percentage), additional rent and taxes, assessments and other charges or impositions payable to the Tenant or the applicable governmental authorities by all sublessees under all subleases affecting all or any portion of the Demised Premises."

In her petition the plaintiff stated the controversy in the following language:

"That defendants Richard M. Cohen and Mace Siegel, d/b/a Macerich Real Estate Company, assignees of the aforesaid lease, have made demand upon the Plaintiff to execute a mortgage between said partnership, the Plaintiff, and John Hancock Mutual Life Insurance Company on said real estate in the amount of Nine Hundred and Forty-Five Thousand Dollars ($945,000).

"That the Plaintiff has heretofore demanded that the aforesaid Macerich Real Estate Company, a partnership, provide her with the figures relating to the actual cost of the construction of the improvements on said real estate, but said Macerich Real Estate Company has and does refuse to furnish said figures to the Plaintiff.

"That the Plaintiff believes that under the lease, heretofore executed and assigned, she has the right to such figures and the right to withhold execution of said mortgage if it purports to mortgage the property out of proportion to the cost of improvement."

The defendants' answer admits that a serious controversy has existed between plaintiff and defendants which controversy, they claim, resulted from the failure of the plaintiff to "perform her duties under the express, plain and unambiguous terms of said indenture of lease" after defendants' demand upon plaintiff to so perform.

After the issues were framed and the instruments placed before the court in the form of exhibits, the defendants moved for summary judgment for the reason that there was "no genuine issue of any material fact and that the defendants herein are entitled to

judgment as a matter of law." The trial court, after hearing extensive arguments, stated:

"All right, Mr. Reporter, let the record show that I have heard the arguments of counsel and have studied the pleadings in connection with this matter, and further that this Court has carefully studied the indenture of lease entered into on the 4th day of November, 1965 between Mrs. Mays —between Miss Mays, I guess that is, a single woman, and the Middle Iowa Realty Corporation, and the assignee thereof which is the Macerich Real Estate Company, and I am of the opinion that Section 33 of this lease entitled "Mortgages" fully settles the rights of the parties in connection with this matter. I want the record to show that this lease is a lease that obviously has been worked out in great detail covering every aspect of this transaction, and as long as the provisions of the rider in Section 33, (H) and (I), have been complied with, then it is this Court's opinion that Miss Mays must execute a mortgage under the provisions thereof. The motion of the defendants for summary judgment in that regard will be sustained. . . ."

Counsel for plaintiff requested and received permission to make an offer of proof. He stated:

"This has been an action for declaratory judgment to determine the meaning of · a lease which is ambiguous in certain respects. There are genuine issues as to material facts concerning this ambiguity. The testimony would be in this case that paragraph (F), Section 33, was intended to mean by all the parties at the time that the lease was executed and at the time the lease was prepared, that a mortgage, that the fee interest of Miss Mays would be subordinated to a construction mortgage for permanent financing to the extent of 100% of such construction costs. . . ."

Counsel then listed the prospective witnesses which he thought would so testify.

The trial court then stated:

"For the purposes of the record, so that it is perfectly clear, the basis of my holding is that this evidence would be inadmissible in that the Court feels that the terms of this lease are fully set forth within its provisions. . . ."

Summary judgment was rendered in favor of the defendants and plaintiff has appealed.

Regardless of the numerous classifications made in her argument, we summarized the real issue sought to be established by appellant —does appellant have the right to refuse to subordinate her land to a mortgage until defendants have furnished her information as to the cost of construction, and does appellant have the further right to refuse to sign the mortgage unless the "cost of construction," as appellant interprets that term, is as much as the face of the mortgage?

In support of the above issue appellant contends that the terms of the contract of lease are ambiguous and that oral evidence should have been received to show the intention of the parties. More specifically the appellant contends that section 33 of the lease, which we have quoted in part and summarized in part, is ambiguous and could not fully settle the rights of the parties without extrinsic evidence.

The appellant, having made the contention that the lease is ambiguous, follows with the contention that summary judgment was improper because a genuine issue of material fact existed.

We find but a single simple issue will dispose of this controversy— is the contract ambiguous? If it is not, no genuine issue of fact existed.

This court has announced a few rules which will aid us in determining whether or not an ambiguity exists in the contract of lease under consideration.

There can be no ambiguity in a written agreement unless after the application of pertinent rules of construction there is left a genuine uncertainty which of two or more possible meanings was intended by the parties. In *State v. Downey*, 198 Kan. 564, 568, 426 P. 2d 55, we stated the rule as follows:

> "In this connection it is to be noted that when confronted with the construction of an instrument, such as the lease before us here, our obligation is not to consider isolated provisions but to consider and construe the instrument in its entirety. (*First National Bank of Lawrence v. Methodist Home for the Aged,* 181 Kan. 100, 309 P. 2d 389; *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 276 P. 2d 350.) We are also mindful of the often stated rule that ambiguity in a contract does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two, or more meanings is the proper one. (*Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501; *Morgan v. Wheeler,* 150 Kan. 667, 95 P. 2d 320.)" (See, also, *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803.)

In determining whether a written contract was ambiguous, we held in *Wood v. Hatcher*, 199 Kan. 238, 428 P. 2d 799:

> "Language in a contract is not ambiguous unless the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings." (Syl. 1.)

Subsection (*f*) of section 33 provides in clear language for two types of permitted mortgages—"permanent financing" and "interim building and construction financing." We are concerned here only with "permanent financing." As the appellees carry their own

interim financing no controversy has been presented on that issue.

Subsection ($h$) of section 33 in clear and specific language limits the amount of the mortgage to the amount determined by multiplying the aggregate number of square feet of floor space in all buildings constructed on the premises times $13 per square foot. It is not denied that the amount of the mortgage is well below the sum so arrived at.

The rider to section 33, subparagraph ($h$) was proposed by appellant and goes directly to the subject of a limit on the amount of a mortgage to which appellant's fee interest would be subordinated. If appellant had been able to negotiate further limitations in that regard, this would have been the place where such further limitations should and would have appeared. Not having done so, the lease as executed by the parties is binding on the parties without such limitation.

Appellant appears to argue that the plain language of section 33, and particularly the rider to section 33 ($h$), is ambiguous for the express reason that it does not contain a provision giving plaintiff the right to refuse to subordinate her fee interest to a mortgage unless the amount of the mortgage is not more than the "cost of construction" of the improvements built on the premises. The mere fact that it does not appear in the lease does not in and of itself establish that the lease is ambiguous.

Actually, the appellant is not asking us to construe an ambiguous instrument but is in effect asking us to add to the terms already covered by the contract.

Where the parties expressly contract under what circumstances an obligation may arise with reference to a certain subject matter, and the contract is entered into without fraud, coercion or mistake, the rights of the contracting parties are measured by the provisions of the contract. (*G. S. Johnson Co. v. N. Sauer Milling Co.*, 148 Kan. 861, 84 P. 2d 934; see, also, *Duvanel v. Sinclair Refining Co.*, 170 Kan. 483, 227 P. 2d 88.)

In *Wood v. Hatcher*, 199 Kan. 238, 428 P. 2d 799, we stated at page 242:

". . . The words incomplete and ambiguous are not synonymous. The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings. A contract is not ambiguous when it fails to contain a restriction against a sale which one party

says should have been inserted. Ambiguity does not arise from total omission. It arises when application of pertinent rules of interpretation to an instrument as a whole fails to make certain which one of two or more meanings is conveyed by the words employed by the parties. (*Roxana Petroleum Corp. v. Jarvis,* 127 Kan. 365, 273 Pac. 661; *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 276 P. 2d 350; *Brungardt v. Smith,* 178 Kan. 629, 636, 290 P. 2d 1039; *Weiner v. Wilshire Oil Co.,* supra [192 Kan. 490, 389 P. 2d 803].)"

Applying the above rules to the lease under consideration, we find no ambiguity in the agreement. We continue to adhere to the well established rule, which has been frequently applied, that where parties have carried on negotiations and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations the written agreement determines their rights. In *Williams v. Safeway Stores, Inc.,* 198 Kan. 331, 424 P. 2d 541, we so stated at page 338:

"When a contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agreements or understanding, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible. (*Brown v. Beckerdite,* 174 Kan. 153, 254 P. 2d 308; 17A C. J. S. Contracts § 322; 17 Am. Jur. 2d Contracts § 260.)

"When terms of a lease are plain and unambiguous the meaning must be determined by its contents alone and words cannot be read into the agreement which import an intent wholly unexpressed when it was executed. (*Borgen v. Wiglesworth,* 189 Kan. 261, 369 P. 2d 360; 17A C. J. S. Contracts § 321; 17 Am. Jur. 2d Contracts § 261.)" (See, also, *Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132; *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803, and cases cited therein.)

What has been said applies with equal force to appellant's claim of right to introduce evidence of inequitable and unconscionable conduct on the part of the appellees in their effort to enforce performance of the agreement. No further discussion of that matter is required. However, we do not mean to infer by the above statement that the conduct was unconscionable under the circumstances.

The lease not being ambiguous, evidence was not admissible to vary its terms. There being no genuine issue of fact, the question was ripe for determination on a motion for summary judgment. We disposed of this question in *Potter v. Northern Natural Gas Co.,* 201 Kan. 528, 441 P. 2d 802, where we stated at page 530:

"If the language of a grant of easement is clear and explicit extraneous circumstances may not be resorted to, nor parol evidence admitted, to vary the terms of the instrument. (25 Am. Jur. 2d, Easements and Licenses, § 23, p. 434; 28 C. J. S., Easements, § 26, p. 680.)

"Therefore, it would appear if the language of the grant is clear and explicit the construction to be given the instrument was a question which could properly be determined on motion for summary judgment under the rules set forth in *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964, and *Jarnagin v. Ditus,* 198 Kan. 413, 424 P. 2d 265."

The judgment is affirmed.

APPROVED BY THE COURT.