**HYDRO CONSTRUCTION, INC., and Hydroline, Inc., Plaintiffs,**

**v.**

**HOOD CORPORATION, d/b/a Hood Badger Company, Defendant.**

**Civ. A. No. KC–3178.**

United States District Court,
D. Kansas.

Feb. 11, 1972.

---

John B. Towner and Robert J. Fleming of Weir, Angwin & Towner, James V. Walker, Pittsburg, Kan., for plaintiffs.

George Maier, Jr. of Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, Kan., for defendant.

## MEMORANDUM OF OPINION

O'CONNOR, District Judge.

The parties in this action entered into two written agreements on June 30, 1969. One contract provided that the defendant would install plastic water pipe for the plaintiffs in Bourbon County, Kansas; and the other called for defendant to install pipe for the plaintiffs in Mayes County, Oklahoma.

For their cause of action, the plaintiffs allege that defendant commenced construction in Bourbon County, but then failed to complete performance of that contract. Because of the alleged breach of contract, plaintiffs claim damages of $85,271.51. Defendant has filed two counter-claims, alleging that it was not permitted to perform the two contracts with plaintiffs and seeking damages in the amount of $10,000.00 on the

Mayes County contract and $13,200.00 on the Bourbon County contract. Plaintiffs have now moved for summary judgment on all issues of liability.

There is no dispute between the parties as to the validity of the two contracts; rather, the questions raised relate to the interpretations given to the two contracts. The Bourbon County contract contains the following provisions relevant to this dispute:

"This agreement, entered into by and between Hood-Badger Company of Whittier, California, of the first part, and Hydro Construction, Inc., of Pittsburg, Kansas, of the second part.

Whereas, the party of the first part agrees to install plastic pipe at Bourbon County Rural Water District No. 1 in accordance with the plans and specifications of that job, using the plow method as opposed to the open-trench method . . .

The party of the second part will pay the party of the first part 11 cents per foot for all accepted pipe in the ground . . .

The first party is responsible for all padding required by the engineer on the pipe they install . . .

The approximate amount of pipe involved in this contract is 550,000 feet."

The contract negotiations were handled by Mr. C. A. Walker for the plaintiffs, and by Mr. Jack Grant for the defendant. Mr. Grant told the plaintiffs about defendant's new machine which was able to plow in plastic pipe much more economically than the pipe could be laid by the old open-trench method. The plow method could not be used, however, in areas of solid rock. Mr. Grant testified that, after his inspection of where the pipe was to be laid, there was only one area of about 1,000 feet which the defendant could not plow. The figure of 550,000 feet in the contract represented the amount of pipe to be laid by defendant, excluding the 1,000 feet of rock. According to Mr. Grant, it was defendant's intention to plow around the rocky areas inasmuch as there was an "open"

easement and by "pre-ripping", defendant could find the areas where the rock was and deviate around the rock. (Grant deposition, pp. 121–122.) In rocky areas, other than the 1,000 feet of solid rock, the defendant was to be responsible for installation of padding as required by the engineer for the Bourbon County Rural Water District. (Grant deposition, p. 23.)

On the date of the signing, the contract was read over the telephone to Mr. Raymond E. McGraw, vice-president of the defendant, and was approved by him. Mr. McGraw later testified that, at a meeting in Pittsburg, Kansas, on July 18, 1969, he had told the plaintiffs that the machine could not plow through rock, that he believed that the defendant had only agreed to plow in that portion of the 550,000 feet which was not rocky, and that the padding clause in the contract was redundant, since the machine could not plow any rock. (McGraw deposition, p. 24 and p. 29.) Furthermore, McGraw felt that the parties accepted this interpretation of the contract at that time. (McGraw deposition, p. 30.)

After defendant had commenced laying pipe, it incurred some rock and refused to plow through or around it. The plaintiffs insisted that the defendant continue to lay the pipe. Having reached this stalemate, the defendant withdrew from the Bourbon County work and this action ensued.

The question clearly presented by plaintiffs' motion for summary judgment, as it applies to the work in Bourbon County, is whether the contract is so plain and unambiguous it leaves no room for interpretation. The contract having been entered into and executed in Kansas, Kansas law applies, and the Supreme Court of Kansas has said:

"Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper one. (Casey v. Aetna Casualty & Surety

Co., 205 Kan. 495, 470 P.2d 821; Schnug v. Schnug, 203 Kan. 380, 454 P.2d 474.)" [Fast v. Kahan, 206 Kan. 682, 684, 481 P.2d 958, 959 (1971).]

"A cardinal principle of contract law is that in the absence of fraud or mutual mistake, a clear and unambiguous contract must be enforced according to its terms. (In re Estate of Johnson, 202 Kan. 684, 452 P.2d 286.)" [Fast v. Kahan, *supra.*]

The provisions of the contract already quoted leave no room for doubt about the intentions of the parties as manifested by the terms thereof. The defendant specifically agreed to install 550,000 feet of plastic pipe by the plow method. The *defendant* was responsible for all padding required. There is no need to interpret what these terms mean since they are plain on their face. Defendant was to install *all* the pipe no matter what the terrain.

Though Mr. McGraw claimed the parties reached a different understanding at their meeting on July 18, 1969, we believe the parol evidence rule applies. In the absence of pleading and proof of some species of fraud or mutual mistake, a plain and unambiguous written contract must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered. In re Estate of Smith, 199 Kan. 89, 427 P. 2d 443. Words cannot be read into an agreement imparting an intent wholly unexpressed when it was executed. Mays v. Middle Iowa Realty Corp., 202 Kan. 712, 452 P.2d 279. In re Estate of Johnson, *supra.* Here the contract is clear and unambiguous, and defendant is precluded from relying on a parol understanding at variance with the express terms of the contract. No issues of material fact remain and summary judgment for plaintiffs is deemed proper on the *Bourbon County* cause of action. Rule 56(c) Fed.R.Civ.P.; Bolack v. Underwood, 340 F.2d 816 (10th Cir. 1965).

Turning now to the Mayes County contract, which is essentially the same as the one already discussed, we must determine whether there are issues of material fact as to the meaning and interpretation of the phrase "in accordance with the plans and specifications of that job." According to the pleadings, the Federal Housing Administration (F.H.A.) plans and specifications would not allow the use of the plow method in Oklahoma. Plaintiffs therefore claim that the Mayes County contract was conditioned upon obtaining F.H.A. approval of the plow method of installing the pipe. As set out in the pretrial order of December 9, 1971, the issues of fact and law are:

A. Whether the obtaining of F.H.A. approval was a condition precedent to the existence of the Mayes County contract;

B. Whether the obtaining of F.H.A. approval was a condition precedent to the obligation to perform under that contract;

C. Whether the parties mutually rescinded the Mayes County, Oklahoma, contract;

D. Whether the Mayes County contract was, by its terms, impossible of performance by the defendant; and

E. Whether plaintiff prevented performance by the defendant on . . . the Mayes County contract.

By the express terms of the contract, defendant agreed to install the pipe in accordance with the plans and specifications for the job, using the plow method. The deposition testimony is undisputed to the effect that F.H.A. approval was a condition precedent to any obligation on the part of the defendant to perform the contract. "A condition precedent to an obligation to perform calls for the performance of some act or the happening of some event after the contract is entered into, upon the happening of which the obligation to perform immediately is made to depend." 17 Am.Jur.2d, Contracts § 321.

On a motion for summary judgment, the trial court may explore whether a disputed issue exists by reference to deposition and affidavit. Bolack v. Underwood, *supra.* Grant testified that the Mayes County job was contingent upon F.H.A. approval, even though the contract had already been signed, and such approval could not be obtained. (Grant deposition, p. 16.) In the absence of F.H.A. approval defendant did not become obligated to perform. For all practical purposes, the contract ceased to exist and performance by both parties was excused. Under the circumstances, plaintiff is not liable for breach of the Mayes County contract as a matter of law.

It is therefore by the court ordered that plaintiffs' motion for summary judgment on all issues of liability be sustained. There remains only the issue of plaintiffs' damages which will be determined after the presentation of evidence.