FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

EUCALYPTUS REAL ESTATE, LLC;
DOVER GROUP, LLC,

    Plaintiffs - Appellants,

v.

INNOVATIVE WORK COMP
SOLUTIONS, LLC; INVO PEO INC. II;
UNITED WISCONSIN INSURANCE
COMPANY,

    Defendants - Appellees.

No. 23-3119
(D.C. No. 5:21-CV-04091-DDC)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

Two LLCs, Eucalyptus Real Estate, LLC ("Eucalyptus"), and Dover Group,

LLC ("Dover Group"), sued Innovative Work Comp Solutions, LLC ("Innovative"),

seeking a declaration that an agreement with Innovative to arrange for workers'

compensation insurance included Eucalyptus. The district court granted summary

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment to Innovative, holding that Eucalyptus was not included.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A. *Factual History*

#### 1.  The Parties and Main Actors

Eucalyptus managed apartment complexes.  Dover Group provided maintenance workers for apartment and office buildings, including the Eucalyptus apartments.

Megan McGinnis was the sole member and president of Eucalyptus.  She and her father, Lew McGinnis, were the only members of Dover Group.  Ms. McGinnis oversaw work and payroll for both LLCs.  Mr. McGinnis was never a member or employee of Eucalyptus, and Ms. McGinnis said her father never played a role there.

Tim Presko was an insurance broker for the McGinnises.  Tim Knight worked for Innovative, which arranged for insurance coverage for its clients.

This case concerns the Administrative Service Organization Agreement ("ASOA") between Dover Group and Innovative that Mr. Presko negotiated with Mr. Knight.  The parties dispute whether the ASOA covered Eucalyptus.

#### 2.  Pre-ASOA

Sometime in 2018, Dover Group transferred all of its employees to Eucalyptus.  After that, Mr. McGinnis became unhappy with Dover Group's workers' compensation insurance and contacted Mr. Presko to obtain a new policy.

2

On November 15, 2018, Mr. Presko applied to Innovative for workers' compensation insurance, listing the "applicant name" as "Dover LLC." App., Vol. 2 at 130-33; *see also id.* at 124-25.

On November 26, 2018, Mr. Presko emailed Mr. Knight and asked, "Does this cover Eucalyptus also- I believe the majority of payroll comes out of this entity and it is common ownership which is on [an insurance rating form] that combines the entities." *Id.* at 150.

Mr. Knight responded the same day:

> Coverage is extended to the employees reported each month to the program. If client has common ownership with another company and reports those under Dover LLC for this program, they are covered if properly classified. There are quarterly . . . audits to ensure full reporting of payrolls. If other employees are covered, the [Form] 941s[1] from those entities would be covered.

*Id.*

3. **The ASOA**

The ASOA said, "This Agreement is entered into by and between **INNOVATIVE** . . . and **DOVER LLC** (hereinafter referred to as "Client" effective as of **11/26/2018**[)]." *Id.* at 151. On the signature page, it again listed the "Client" as "DOVER LLC." *Id.* at 154. And on the page describing "Account Rates," it listed

---

[1] IRS Form 941s are tax returns filed quarterly that list a business's number of employees. *See* App., Vol. 2 at 141; App., Vol. 3 at 105-07.

the "CLIENT NAME" as "DOVER LLC." *Id.* at 156. It did not mention Eucalyptus. *Id.* at 151-57.

On November 26, the same day as the Presko-Knight email exchange, Mr. McGinnis signed his name on the ASOA under the heading "Client: DOVER LLC" on the line designated for the "Client Signature." *Id.* at 154. He also signed on the page listing the "CLIENT NAME" as "DOVER LLC." *Id.* at 156. Finally, he signed and wrote "Dover Group LLC" above his signature on two other pages. *Id.* at 155, 157. Ms. McGinnis did not sign the ASOA. *Id.* at 151-57.

The ASOA stated that Innovative would procure workers' compensation insurance for the client's reported employees. It further stated that Innovative would estimate the client's insurance premiums based on the client's reported number of employees, which Innovative would derive from auditing the client's Form 941s and payroll reports.

4. **Post-ASOA**

Innovative obtained a workers' compensation insurance policy from United Wisconsin Insurance Company that started on November 30, 2018. The McGinnises directed monthly payments of premiums to Innovative. Innovative created an electronic reporting account under the name "Dover." Eucalyptus reported its payroll to Innovative each month through that account. Eucalyptus also sent Innovative its Form 941s for the last quarter of 2018 and the first quarter of 2019.

On May 10, 2019, a Eucalyptus employee suffered a work-related injury that Eucalyptus reported to Innovative. Six days later, on May 16, Innovative terminated

4

the ASOA for "[u]nderwriting [r]easons." *Id.* at 187. On May 29, Innovative sent a letter to Mr. McGinnis stating it was refunding all premiums paid "on behalf of Dover, LLC" because the ASOA "between Dover, LLC and Innovative . . . was predicated on Dover, LLC having employees on their payroll." *Id.* at 186. When Eucalyptus protested, Innovative responded that the ASOA did not cover Eucalyptus.

## B. *Procedural History*

Eucalyptus and Dover Group sued Innovative in Kansas state court. They sought a declaratory judgment "that the provisions of the ASOA should be interpreted and/or reformed to provide that the term 'CLIENT' refer[red] to both Dover and Eucalyptus in conformance with the parties' intent." App., Vol. 1 at 25; *see also id.* at 169. Innovative removed the suit to the United States District Court for the District of Kansas.

After discovery, the parties submitted a pretrial order. Innovative then moved for summary judgment, arguing that the ASOA did not cover Eucalyptus and should not be reformed to cover it. Eucalyptus and Dover Group responded that (1) the ASOA covered Eucalyptus, (2) the ASOA should be reformed because the parties mutually intended it to cover Eucalyptus and it mistakenly did not, and (3) the ASOA should be reformed because Innovative's fraudulent acts caused them to mistakenly believe the ASOA covered Eucalyptus.

The district court granted Innovative's motion. It said that (1) the ASOA unambiguously recognized "Dover LLC" as the only client; (2) the evidence did not

5

show mutual mistake; and (3) Eucalyptus and Dover Group waived the argument they now call unilateral mistake, and the facts did not otherwise support relief.[2]

Eucalyptus and Dover Group timely appealed.

## II.  DISCUSSION

We affirm the district court because (A) the ASOA did not cover Eucalyptus, (B) Eucalyptus and Dover Group did not show mutual mistake, and (C) they waived unilateral mistake.

"We review de novo a grant of summary judgment and apply the same standard as the district court," viewing all facts and "draw[ing] all reasonable inferences" in favor of the nonmoving party.  *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022); *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271, 274 n.1 (2009).  We affirm a grant of summary judgment if "there is no

---

[2] The court had diversity jurisdiction under 28 U.S.C. § 1332.  Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts exercising diversity jurisdiction over state law claims, "when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes" of the forum state—in this case, Kansas.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

Kansas law enforces contractual choice of law provisions "under most circumstances," *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 374 (Kan. 2002).  Here, the ASOA had a Georgia choice of law provision.  App., Vol. 2 at 153.  But a party waives enforcement of a choice of law provision by failing to dispute the application of another state's law.  *See, e.g.*, *IDG, Inc. v. Cont'l Cas. Co.*, 275 F.3d 916, 920 (10th Cir. 2001).  The district court applied Kansas law because the parties relied on Kansas law in their arguments and the court found no material difference between Georgia's and Kansas's substantive laws.  The parties do not dispute the application of Kansas law, so we apply it here.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A. *Did the ASOA Cover Eucalyptus?*

Eucalyptus and Dover Group argue the ASOA is ambiguous and parol evidence shows it covered Eucalyptus. Aplt. Br. at 21-30. We disagree. We review de novo questions of contract ambiguity. *Sprint Nextel Corp. v. The Middle Man, Inc.*, 822 F.3d 524, 531 (10th Cir. 2016).

### 1. **Legal Background**

When a contract is complete and unambiguous, "parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible." *Decatur Cnty. Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999) (quotation omitted).[3] "[A] contract is ambiguous when the words . . . may be understood to reach two or more possible meanings." *Mobile Acres, Inc. v. Kurata*, 508 P.2d 889, 894 (Kan. 1973) (quotations omitted). Because "[a]mbiguity does not arise from total omission," *Mays v. Middle Iowa Realty Corp.*, 452 P.2d 279, 285 (Kan. 1969) (quotations omitted), "[w]ords cannot be written into a contract which import an intent wholly unexpressed when it was executed," *Quenzer v. Quenzer*, 587 P.2d 880, 882 (Kan. 1978).

If a contract is ambiguous on "a specific matter," courts may consult parol evidence to clarify the parties' intention. *First Nat'l Bank of Olathe v. Clark*, 602

---

[3] The parties do not dispute that the ASOA is complete.

P.2d 1299, 1304 (Kan. 1979) (quotations omitted); *see also Kurata*, 508 P.2d at 894

(explaining courts may examine parol evidence when a contract permits multiple

meanings to determine "which . . . meaning[] was intended").  But even if a contract

contains ambiguous terms, parol evidence cannot "add to the terms already covered

by the contract."  *Mays*, 452 P.2d at 284.

2.  **Application**

The ASOA unambiguously does not cover Eucalyptus.  We may not consider

parol evidence suggesting otherwise.

The ASOA never mentioned Eucalyptus, and "[a]mbiguity does not arise from

total omission."  *Id.* at 285 (quotations omitted); *see Duffin v. Patrick*, 512 P.2d 442,

448 (Kan. 1973).[4]  Instead, the ASOA defines the "client" as either Dover LLC or

Dover Group.  App., Vol. 2 at 151, 154, 156, 157.  We may not "add to the terms

already covered by the contract," *Mays*, 452 P.2d at 284, even if the terms are

ambiguous, *see Kurata*, 508 P.2d at 894 (courts may examine which meaning

---

[4] Eucalyptus and Dover Group argue the ASOA contains a latent ambiguity because reading it to exclude Eucalyptus would result in Dover Group's agreeing to pay Innovative premiums to cover no employees.  Aplt. Br. at 24-25.  They waived this argument by failing to raise it before the district court or arguing plain error on appeal. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011); App., Vol. 3 at 19-24 (arguing only that the ASOA "is ambiguous on its face"). !
Eucalyptus and Dover Group also incorrectly argue the district court erroneously held "that the ASOA was clear because Mr. McGinnis, Ms. McGinnis, and Mr. Presko were sophisticated parties."  Aplt. Br. at 30 (citing App., Vol. 4 at 75).  Instead, the district court explained that the parties' sophistication "do[es]n't suggest anything other than that [Eucalyptus and Dover Group] freely contracted and knowingly entered the ASO[A]."  App., Vol. 4 at 75.

8

discernable from the contract was intended).  We therefore may not consider evidence of a third "wholly unexpressed" meaning—that Eucalyptus was a client. *Quenzer*, 587 P.2d at 882.

Any ambiguity in the ASOA concerns its references to Dover LLC and Dover Group, not whether it covers Eucalyptus.  The ASOA lists Dover LLC as the client. App., Vol. 2 at 151, 154, 156.  Mr. McGinnis twice signed the ASOA and wrote "Dover Group LLC" each time.  *Id.* at 155, 157.  We can reasonably read the ASOA to cover either Dover LLC or Dover Group, and we may consult parol evidence to determine "which one of [these] two . . . meanings [the parties] intended." *Kurata*, 508 P.2d at 894.[5]  But this ambiguity has nothing to do with Eucalyptus.  The ASOA therefore unambiguously does not cover Eucalyptus.  We may not examine parol evidence to the contrary.

B. ***Did Eucalyptus and Dover Group Show Mutual Mistake on ASOA Coverage?***

Eucalyptus and Dover Group argue they presented sufficient evidence of mutual mistake to preclude summary judgment.  Aplt. Br. at 31-35.  We disagree.

1.  **Legal Background**

A party seeking reformation of a contract due to mutual mistake must show (1) "an antecedent agreement that the written instrument" attempts to articulate;

---

[5] Dover LLC was separate from and unrelated to Eucalyptus and Dover Group. The McGinnises were not members of Dover LLC.  Mr. McGinnis, a member of Dover Group, signed the ASOA.  The parol evidence shows that the ASOA covered Dover Group, not Dover LLC.

(2) "that a mistake occurred in drafting the instrument and not the antecedent agreement"; and (3) "that the mistake is mutual." *The Unified Gov't of Wyandotte Cnty./Kan. City v. Trans World Transp. Servs., L.L.C.*, 227 P.3d 992, 995 (Kan. Ct. App. 2010). This showing requires clear and convincing evidence, *In re Est. of Shirk*, 399 P.2d 850, 856 (Kan. 1965), which "is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt," *In re B.D.-Y.*, 187 P.3d 594, 598 (Kan. 2008).

When parties must prove their case by clear and convincing evidence, at summary judgment "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "[T]here is no genuine issue if the evidence presented . . . is of insufficient caliber or quantity to allow a rational finder of fact to find [for the party] by clear and convincing evidence." *Id.*

2. **Application**

On appeal, Eucalyptus and Dover Group point to the following evidence they presented to the district court: (1) the November 26 email exchange, (2) Innovative's May 29 letter, and (3) Innovative's acceptance of Eucalyptus's Form 941s and payroll. *See* Aplt. Br. at 33. They did not meet their evidentiary burden to survive summary judgment.

a. *November 26 email exchange*

The Presko-Knight email exchange does not support any of the elements of mutual mistake. Mr. Knight's email explained that the ASOA would cover another

10

company if that company (1) "ha[d] common ownership" with Dover Group, (2) had employees "report[ed] . . . under Dover [Group] for th[e] program," and (3) had "properly classified" employees. App., Vol. 2 at 150.[6] Mr. Knight did not say that Eucalyptus was covered. Instead, he said the insurance policy could cover "another company" if it met those criteria. *Id.*

Mr. Knight's email indicated he did not know whether Eucalyptus met all of those criteria. Mr. Presko's email said "the majority of the payroll" came from Eucalyptus and that Eucalyptus was in "common ownership" with Dover Group, *id.*, so Eucalyptus may have met the first criterion of common ownership. But Mr. Presko's email did not and could not say whether Eucalyptus met the other two criteria—that Dover Group reported Eucalyptus employees through its Form 941s and that the employees were properly classified. No such information was provided to Innovative before the parties agreed to the ASOA. The email exchange thus does not show that (1) the parties had an antecedent agreement to cover Eucalyptus, (2) a mistake occurred in drafting the ASOA, or (3) any mistake was mutual. *See Trans World Transp. Servs., L.L.C.*, 227 P.3d at 995.

---

[6] Eucalyptus and Dover Group also fault the district court for "accept[ing] the non-moving party's after-the-fact-testimony" when it discussed Mr. Knight's testimony that his email meant Eucalyptus was not covered. Aplt. Br. at 32. Because we consider only the evidence they contend met their burden, we do not consider Mr. Knight's testimony.

b. *May 29 letter*

Eucalyptus and Dover Group argue that Innovative's May 29 letter terminating the ASOA showed that it entered the ASOA intending to cover Eucalyptus. *See* Aplt. Br. at 33. But its letter showed just the opposite. As Eucalyptus and Dover Group correctly note, Innovative said in the May 29 letter that the ASOA was "predicated on Dover, LLC having employees on the payroll." *Id.* (quoting App., Vol. 2 at 186). Innovative "effectively admitted," *id.*, that it believed Dover Group had employees when it entered the ASOA, so there was no evidence of an antecedent agreement that Eucalyptus would be covered, *see* App., Vol. 2 at 186.

c. *Post-November 26 forms and payroll*

Eucalyptus and Dover Group argue that Innovative's acceptance of Eucalyptus's Form 941s and payroll information in the months after it entered the ASOA showed an antecedent agreement to cover Eucalyptus. Aplt. Br. at 33. But even if this inference were possible, this evidence does not indicate when or on what terms the parties may have agreed to cover Eucalyptus. No reasonable jury could find by clear and convincing evidence that a mutual mistake "occurred in drafting" the ASOA based on an "antecedent agreement." *Trans World Transp. Servs., L.L.C.*, 227 P.3d at 995.

C. ***Did Eucalyptus and Dover Group Waive Unilateral Mistake?***

Eucalyptus and Dover Group argue they did not waive a unilateral mistake argument because they asked for reformation in their pretrial order. Aplt. Br. at 35-36. We disagree. We review for abuse of discretion a district court's decision

12

that because an issue was not asserted in the pretrial order, it was waived. *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817-18 (10th Cir. 1979).

1. **Legal Background**

a. *Unilateral mistake*

Under Kansas law, courts may reform a contract for unilateral mistake "where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him." *Andres v. Claassen*, 714 P.2d 963, 969 (Kan. 1986); *see also Trans World Transp. Servs., L.L.C.*, 227 P.3d at 995 (explaining that "when there is no fraud or inequitable conduct by a party," the party seeking reformation must show "that the mistake is mutual").

b. *Waiver*

"[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . ." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). "Proper pretrial orders . . . should be liberally construed to cover any of the legal or factual theories that might be embraced by their language." *Trujillo*, 608 F.2d at 818 (quotations omitted). "[S]pecificity [in a pretrial order] is conducive to a finding that a particular claim is rendered irrelevant by the pretrial order," while "general terms, loosely used . . . cannot be fairly construed as limiting the underlying theory to be litigated." *Id.*

13

2.  **Application**

Because Eucalyptus and Dover Group specifically raised mutual mistake in their complaint and pretrial order and did not raise unilateral mistake, the district court properly determined they waived unilateral mistake as a basis to reform the ASOA.

Eucalyptus and Dover Group's complaint and pretrial order specifically asked for reformation due only to mutual mistake.  In the complaint, they alleged, "[I]t was the intent of the parties to the ASOA that the term CLIENT . . . refer[red] to Dover [Group] and Eucalyptus, and the ASOA should be reformed to comply with the intent of the parties."  App., Vol. 1. at 161.  They alleged substantially the same in the pretrial order:  "[I]t was the mutual intent of the parties that the term CLIENT, as used in the ASOA, refer[red] to Dover Group . . . and Eucalyptus . . . and the [ASOA] should be reformed as necessary to accurately reflect and effectuate the intent of the parties."  *Id.* at 233; *see also id.* at 241 (requesting reformation "in conformance with the intent of the parties").

Eucalyptus and Dover Group never mentioned unilateral mistake or alleged that Innovative acted fraudulently or inequitably in the complaint or pretrial order. *See id.* at 156-69 (complaint); *id.* at 226-47 (pretrial order).  Their specifically raising mutual mistake as a basis for reformation "is conducive to a finding" that they waived a unilateral mistake argument by failing to raise it.  *Trujillo*, 608 F.2d at 818. The district court did not abuse its discretion.  Eucalyptus and Dover Group's contrary arguments fail.

First, they argue they properly raised unilateral mistake in the pretrial order because Innovative "specifically defended" against unilateral mistake in the pretrial order.  Aplt. Br. at 36.  But rather than defend against unilateral mistake, Innovative said Eucalyptus and Dover Group had waived the issue, and even if they had not waived it, they could not prove it:  "[Eucalyptus and Dover Group] have not alleged and cannot prove unilateral mistake of [Eucalyptus and Dover Group] and fraud of [Innovative]."  App., Vol. 1 at 243.  If anything, Innovative's arguments should have put Eucalyptus and Dover Group on notice of a need to amend the pretrial order to include unilateral mistake.

Second, Eucalyptus and Dover Group argue that we should overlook waiver.  Aplt. Reply Br. at 17.  We do not address their argument because they raised it for the first time in their reply brief and offered no justification for failing to do so in their opening brief.  *See United States v. Pickel*, 863 F.3d 1240, 1259 (10th Cir. 2017).

The district court did not abuse its discretion when it determined Eucalyptus and Dover Group waived unilateral mistake.

## III. CONCLUSION

We affirm.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge